GRAVES *v.* FIRST NATIONAL BANK OF BENTON-
VILLE.

Opinion delivered November 13, 1916.

1.   VENDOR'S LIEN—RIGHTS OF ASSIGNEE OF NEGOTIABLE NOTE.—The assignee of a negotiable note has the right to rely upon the reservation of a lien recited in the face of a deed which passes with the note, and in the absence of notice, or information as to facts sufficient to put him upon notice, he is protected against equities existing in favor of the vendee against the vendor.

2.   VENDOR'S LIEN—PURCHASER OF NOTES.—A subsequent purchaser of land from the original vendee is chargeable with notice of a lien appearing on the face of the deed in the line of his title, and cannot, as against an innocent purchaser of the note, set up equities which his vendor could not have taken advantage of.

3.   JUDICIAL SALES—CONFIRMATION—VENDOR'S LIEN.—One T transferred certain land to J, taking notes therefor, and reciting a vendor's lien in the deed.   T assigned the notes to appellee.   J then transferred the land to appellant, who foreclosed the vendor's lien.   *Held,* T had a right to purchase at the sale and was entitled to a confirmation of his deed.

Appeal from Benton Chancery Court; *W. A. Falconer*, Chancellor; affirmed.

*E. P. Watson,* for appellant.

1. Appellant had the right to prove that the $350.00 note was executed for a separate consideration for the Springtown lots, and that the $475.00 note was not a lien on the 40-acre tract, and that the bank had notice. A vendor's lien does not arise from an exchange of lands. The-40 acre tract was not subject to the lien. Pom. Eq. Jur. (3d ed.), §§ 1251, 1255; 36 Barb. 195; 13 Ark. 112; 99 *Id.* 218, 350; 54 *Id.* 195; 75 *Id.* 89. Parol evidence was admissible. 27 Ark. 510; Jones on Ev., § 499; 121 Ill. 366; 93 Ark. 191; 69 *Id.* 313; 53 *Id.* 4; 29 A. and E. Enc. (2 ed.) 896.

2. A vendor's lien can only exist for the purchase money of the land. 36 Ark. 166; 39 Cyc. 1806; 27 S. W. 167; 60 Ark. 90; 37 *Id.* 384; Jones on Mortg., §§ 193, 271; 4 Fed. 577.

3. Tate had no lien on the 40-acre tract and the bank has none as assignee. 19 A. and E. 10; 40 Am. Dec. 33; 95 *Id.* 572; 39 Cyc. 1812; 24 Ala. 37; 8 Ky. L. Rep. 422; Kirby's Digest, § 510; 60 Ark. 90; 1 Jones on Mortgages, 147.

4. Tate was primarily liable and could not purchase the land.

*McGill & Lindsey,* for appellee.

1. The bank was an innocent purchaser for value without notice, and the lien was reserved on the lots and the tract on the face of the notes. There is no error. 60 Ark. 90; 60 *Id.* 90; 115 *Id.* 366.

2. Parol proof was not admissible. Peel had no notice.

*Mauck & Seamster,* for appellee Tate.

Parol testimony was not admissible. 29 Ark. 544; 106 *Id.* 461-3. Tate was entitled to purchase. He owed no debt to Jones nor appellant.

McCULLOCH, C. J. This is an action instituted by appellee, First National Bank of Bentonville, Arkansas, as assignee of two negotiable promissory notes, alleged to be secured by a vendor's lien on real estate, to

recover the amount of said notes and to enforce the lien on the land. The notes were executed by Alvin Jones to Thomas Tate, and by the latter sold and assigned before maturity to said appellee. Appellant, J. I. Graves, purchased the land from Jones, and was made a party defendant in the action. Jones and Tate were also made defendants, the former as maker of the note and the latter as assignor.

Jones owned a farm in Washington county, Arkansas, and exchanged it with Tate for certain lands in Benton county, consisting of a certain tract of farm land containing forty acres, two lots in Springtown, Benton county, and another lot containing one acre not involved in this controversy. It appears from the evidence that Jones was to pay the sum of $350.00 as a part of the consideration for the exchange, and that that amount was to be treated as part of the price of the two lots in Springtown. A deed was executed by Tate to Jones and was placed in the bank to be held until the parties were ready to consummate the trade. Later it was discovered that there was an unsatisfied mortgage lien on the Washington county land for the sum of $475.00, and Jones made an unsuccessful effort to borrow the money to pay off the debt. The parties met again for the purpose of consummating the trade, and the negotiations then had between them resulted in the execution of a new deed from Tate to Jones conveying the forty-acre tract and the lots in Springtown, with recital therein of a vendor's lien on all the property conveyed to secure two purchase-money notes, one for $350.00 and the other for $475.00. Jones accepted this deed and executed the two notes to Tate who subsequently assigned the same to appellee bank.

Jones testified that he did not know at the time he accepted the deed that there was a recital therein to the effect that a vendor's lien was reserved on all the property conveyed. There was a separate conveyance from Tate to Jones of the other lot not involved in this controversy. Jones afterwards, by separate

deeds executed to appellant, conveyed the forty-acre tract and the two lots in Springtown. Appellant insisted in the trial below upon the right to prove that the $350.00 note was executed by Jones as a separate consideration for the price of the Springtown lots, and that the $475.00 note was not executed as a part of the purchase price but for money borrowed by Jones from Tate, and he contends that the lien for the $350.00 should be confined to the Springtown lots and that the $475.00 should not be declared to be a lien on the property. The court decreed in favor of the bank and declared a lien on both pieces of property, which were sold by the commissioner of the court, and the forty-acre tract was purchased by Tate. After confirmation of the sale, appellant objected to the approval of the commissioner's deed to Tate on the ground that Tate's purchase constituted a redemption from the lien.

It is unnecessary to determine whether, as between appellant and Tate, the original assignor, it was competent to prove by parol evidence the fact that one of the notes was executed as a separate consideration for one of the lots, and that the note for $475.00 was not a part of the purchase money for the land but was for money borrowed by Jones from Tate, for we are of the opinion that even if the testimony was competent, appellee is entitled to protection as an innocent purchaser.

"Under the statutes of this State," said Judge Battle in delivering the opinion of this court in *Pullen* v. *Ward*, 60 Ark 90, "the lien retained in the face of the deed became a security for the payment of the notes, and passed to the assignee of the same    *   *   * The assignee thereby acquired the right to enforce the lien, and cause the land to be sold to satisfy it. In this respect, it is analogous to a mortgage executed to secure the payment of a note, and is controlled by the same rules of law. When a negotiable note is executed, and a mortgage is given at the same time to secure its payment, and the note is transferred for value before maturity, without notice of any defenses against it,

the assignee, when he seeks to foreclose the mortgage for the purpose of collecting the debt, is not affected by any equities existing between the mortgagor and mortgagee of which he had no notice at the time he became the owner of the note. * * * The two are inseparable—the note as the principal and essential thing; the mortgage as an accessory and an incident. The latter can have no existence independent of the former. When the note is assigned the mortgage follows it as an incident, and when the former is paid the latter expires."

Our statute on the subject provides as follows: "The lien or equity held or possessed by the vendor of real estate, when the same is expressed upon or appears from the face of the deed or conveyance shall inure to the benefit of the assignee of the note or obligation given for the purchase money of such real estate, and may be enforced by such assignee." Kirby's Digest, Sec. 510.

(1-2) It follows, therefore, that the assignee of a negotiable note has the right to rely upon the reservation of a lien recited in the face of the deed, and in the absence of notice, or information as to facts sufficient to put him upon notice, he is protected against equities existing in favor of the vendee against the vendor. A subsequent purchaser of the land from the original vendee is also charged with notice of the lien appearing on the face of the deed in the line of his title, and cannot, as against an innocent purchaser of the note, set up equities which his vendor could not have taken advantage of.

The evidence was sufficient to warrant the finding of the chancellor that the bank was an innocent purchaser of the notes for value and without notice. The only evidence tending to prove notice to the bank is the testimony of Jones to the effect that at the time the trade was consummated and the notes executed Tate called the cashier of appellee bank over the telephone, and in the conversation stated that the forty-acre tract of land was gilt edge security for $475.00.

Even if this should be deemed sufficient proof to show that the cashier was informed of the existence of the facts as claimed by appellant, that testimony is contradicted by the testimony of the cashier, who says he had no information at all of any facts other than that the two notes were recited as a lien on all of the lands conveyed. The cashier testified that he was called to the telephone and informed by Tate that he had some land notes to sell and was asked to purchase them, and that he told him to bring them in; that subsequently the notes were brought to him and he purchased them on the faith that they constituted a lien on the lands conveyed by the deed. It cannot be said that the finding of the chancellor is against the preponderance of the testimony.

(3) It is argued in behalf of appellant that the court erred in approving the commissioner's deed to Tate, and that because Tate was liable to the bank as indorser, his purchase of the land constituted a redemption from the lien. Tate was merely liable to the bank as indorser of the notes. He was under no obligation either to Jones, his vendee, or to appellant, as subsequent purchaser, to protect the lands from the lien recited in the deed, and therefore had the right to purchase at the sale.

There was no error committed by the court in the original decree or in the subsequent order approving the deed.

Affirmed.