TROYER v. CAMERON.

Opinion delivered October 15, 1923.

1. BILLS AND NOTES—INNOCENT PURCHASER.—Where the payee of notes has transferred them as collateral security for a loan, he could not, by a separate written assignment, transfer his interest in them to another, so as to constitute the latter an innocent purchaser under the negotiable instrument law.

2. FRAUD—REPRESENTATIONS RELIED UPON.—In order that representations may be fraudulent in law, they must be made by one who either knows them to be false or else, not knowing, asserts them to be true, and made with intent to have the other party to act upon them to his injury, and such must be their effect.

3. FRAUD—REPRESENTATIONS NOT RELIED UPON.—A party to a land transaction cannot contend that he was injured by false representations made by the other party as to the market value of the land if he did not rely upon such representations, but made independent investigations concerning the property.

4. FRAUD—REPRESENTATIONS—DAMAGES.—Where a vendor of land represented part of it as river bottom land, free from overflow, and the rest as a good grade of upland, when in fact the bottom land was subject to overflow and the other infested with Bermuda grass, the purchaser, relying upon such representation, was entitled to have his purchase notes credited with the difference between the value of the land as represented and as it actually was.

Appeal from Sevier Chancery Court; *James D. Shaver,* Chancellor; reversed.

*Abe Collins,* for appellants.

It is not sufficient to show that the representations complained of were false. It must also be shown that they were made with intent to have the other party act upon them to his injury, and that the party making them did not honestly believe to be true when he made them. 30 Ark. 419; 11 Ark. 378.

*Lake & Lake,* for appellees.

1. The chancellor found that the weight of the evidence brought the case within the application of the rule recognized by this court in numerous cases, viz: (1) that the fraud related to some matter of inducement to the making of the contract; (2) that it wrought injury

to the party complaining; (3) that the relative position of the parties was such, and their means of information such, that the vendee must be presumed to have contracted upon the faith reposed in the statements of the vendor, and (4) that he did rely on them, and had the right to rely upon them in the full belief of their truth. 47 Ark. 148; 112 Ark. 499; 113 Ark. 81; 119 Ark. 100; 101 Ark. 613; 123 Ark. 278; 125 Ark. 576; 127 Ark. 383. Fensler's advertisement was a statement of fact, purporting to be based upon his personal knowledge. He cannot be heard to say that he was merely repeating something that a third party had told him. 26 C. J. 1131.

2. The judgment is not excessive. The rights of the parties to the transaction were fixed as of the date the deal was consummated. 123 Ark. 275; 125 Ark. 573. Tested by the rule laid down in *Matlock* v. *Reppy,* 47 Ark. 148, as to the measure of damages, the finding of the chancellor is fully supported by the evidence.

3. Instead of being an innocent holder of the note sued on, as insisted by appellant, Lillian Troyer is not, and never has been, a holder of the note, innocent or otherwise. The attempted assignment thereof while in the possession of Moore was non-effective. C. & M. Digest, §§ 7796-7-8.

HUMPHREYS, J. Appellees purchased the Glenwood Stock Farm, one mile from DeQueen, containing 217 acres, from G. W. Fensler for $13,450, and in payment thereof conveyed their equity in California property for $7,900 and executed their notes to him for $5,500, secured by a mortgage on the Glenwood Farm. The deal was made in December, 1917, and the notes and mortgages were dated February 1, 1918. The notes were for $1,000 each, except the last one, which was for $1,550; and all bore interest at the rate of 7 per cent. per annum from date until paid. They matured in one, two, three, four and five years. Fensler assigned the notes to Henry Moore to secure an indebtedness of $1,500 for

borrowed money, and on January 29, 1920, undertook to assign his equity in them in a detached, written intrument, to his sister, Lillian M. Troyer, for a valuable consideration, while same were in the possession of Moore.

Appellees failed to pay said notes at maturity, and appellant, Lillian M. Troyer, and Henry Moore instituted this suit in the chancery court of Sevier County to enforce the payment of the notes, alleging that they were innocent purchasers of them.

Appellees filed an answer denying that said appellant and Moore were innocent purchasers. They also interposed the further defense that they purchased the Glenwood Farm through fraudulent misrepresentations of G. W. Fensler to the effect that the bottom land of 180 acres was above overflow and that the balance was a good grade of upland, when in truth the bottom land was subject to overflow and the upland infested with Bermuda grass, to their damage in the sum of $7,000, being the alleged difference between the value of the land as it is and as it was represented. They asked that their answer be taken as a cross-bill, and that G. W. Fensler be made a party defendant, which request was granted.

G. W. Fensler filed a separate answer denying *seriatim* the allegations of the answer with reference to the alleged misrepresentations made by him, or that he did not sell the notes sued upon in good faith. He also alleged that misrepresentations were made by appellees to him concerning the market value of the California properties, to his damage in the sum of $8,800, for which he prayed judgment.

Lillian M. Troyer and Henry Moore filed a reply denying the allegations of the answer *seriatim*.

The cause was submitted to the court upon the pleadings and testimony, which resulted in a decree in favor of the representative of the estate of Henry Moore for the sum of $1,500 principal, and $104.52 interest, which was paid by appellees on the day the lands were to be sold for the satisfaction of the judgment; and a judg-

ment dismissing the bill of Lillian M. Troyer and cross-bill of G. W. Fensler, for the want of equity. From the decree dismissing the bill and cross-bill an appeal has been duly prosecuted to this court, and the cause is before us for trial *de novo.*

It is first insisted that the decree should be reversed because the trial court refused to hold that Lillian M. Troyer was an innocent purchaser of the notes. The notes were payable to order, and to have negotiated them it was necessary for Fensler to indorse them by writing his name on the instrument itself, or upon a paper attached thereto, and to deliver them. Section 7796-7798, Crawford & Moses' Digest. This was not done. At the time of the attempted assignment the notes were in possession of Henry Moore, who held them as collateral security. Fensler was not in possession of them, and could not negotiate them within the meaning of the negotiable instrument law. Parts of negotiable instruments cannot be transferred, nor can such instruments be negotiated by transferring them to two or more indorsees separately. Section 7798, Crawford & Moses' Digest. The detached written assignment of the notes by Fensler to his sister could not operate as a negotiation of them to her, as Moore held them at the time under assignment from Fensler.

It is next insisted that the decree should be reversed because the trial court found that the sale of the farm was induced by fraudulent misrepresentations. Fensler advertised the farm for sale in ''The Western Salesman,'' published at Minneapolis, over his name. The lands were described in the advertisement as follows: ''217 acres one mile from DeQueen, Sevier County, Arkansas. 180 acres bottom land, above overflow, and the other a good grade of upland. 35 acres timber.''

The Camerons, who resided in Rosedale, California, saw the advertisement, and wrote to Fensler. A correspondence ensued which resulted in an exchange of the lands without inspection of either property by the respec-

tive parties. The correspondence and advertisement revealed that Fensler represented the bottom lands on his farm to be above overflow and the upland of a good grade. Appellees testified that they informed Fensler of the impossibility of either of them coming to Arkansas on account of the illness of Mrs. Cameron, and that they were unacquainted with the land or country, and on that account would rely entirely upon his representations as to the character of the land in making the purchase. Fensler did not deny these statements, contenting himself with saying that the representations he made were based upon information he had received from others, and that his meaning in making the representations was that the land would not overflow during crop seasons. The great preponderance of the evidence is to the effect that the land is subject to overflow during any extended rainy spell, in or out of crop season; and much of the testimony tended to show that he was fully cognizant of this fact when he represented otherwise. He lived upon the farm long enough to have known the conditions. The testimony also showed that the upland was infested with Bermuda grass, which impaired it, to some extent, for agricultural purposes. Fensler represented as a fact that the bottom lands were above overflow, and that the upland was of a good grade. The representations were false, but it is really immaterial whether he knew them to be false or not. They were made with intent to have the Camerons act upon them to their injury, and they had that effect. This court has laid down the following rule governing actionable misrepresentations: "In order that representations may be fraudulent in law, they must be made by one who either knows them to be false, or else, not knowing, asserts them to be true, and made with the intent to have the other party to act upon them to his injury, and such must be their effect." *Ryan v. Bachelor,* 95 Ark. 375; *First National Bank of Newark v. People's National Bank of Springfield,* 97 Ark. 15; *Jarratt v. Langston,* 99 Ark. 438; *Brown v. Lemay,* 101

Ark. 95. We think the chancellor's findings as to actionable misrepresentations made by Fensler are supported by the weight of the evidence. It is suggested by appellants that appellees misrepresented the value of the California properties, and that the court ignored this fact in arriving at the amount of damages suffered by appellees. It is true that Fensler realized little out of those properties, but that can make no difference, for Fensler did not rely upon the representations made by the Camerons concerning their property. He made independent investigations concerning the market value thereof. Representations, in order to be actionable, must have been relied upon by the injured party. *Arkadelphia Lumber Co.* v. *Thornton,* 83 Ark. 403.

The last insistence for a reversal of the decree is that the judgment for damages was excessive. The measure for damages for actionable misrepresentations announced by this court is as follows: ''In actions of deceit, the injured party may insist on having his damages measured by the differences in the value of the property purchased as it really was, and what it would have been had the representations made concerning it been true.'' *Matlock* v. *Reppy,* 47 Ark. 148. According to the weight of the testimony, the market value of the land at the time of the exchange was about $65 an acre, had it been free from overflow and not infested with Bermuda grass. There were thirteen witnesses who testified relative to the actual value of the farm at the time the deal was made in December, 1917, seven on the part of appellants, and six on the part of appellees. Those on behalf of appellants placed the value at $50 to $70 an acre, and those on behalf of appellees at $20 to $25 an acre. All of these witnesses were acquainted with the particular tract of land, and most of those who testified on behalf of appellants were familiar with land values in that vicinity. Some of them formed their opinions from market values as a basis, while others formed them upon intrinsic values as a basis. The im-

provements upon the farm were good, having cost about $2,500. Appellees took up their residence on the land in 1918 and lived there until this suit was instituted, without serious complaint as to any misrepresentations having been made to them. During the time of their residence they refused to entertain a trade for the land upon the value basis of $9,000. They listed the land for sale with E. D. Stuart, a real estate agent, in November, 1921, for $13,000, and with H. S. Shaw, another real estate agent, for $150 an acre in the summer of 1918, and with J. T. Carleton for $100 an acre in 1921. In view of the fact that a number of witnesses, all of whom are familiar with the farm, have taken the wide range of $20 to $70 per acre as to its value in December, 1917, we have concluded, in the light of the whole evidence, that $50 an acre would have been a fair market value of it at that time. In other words, $15 per acre would be a fair and reasonable damage to appellees on account of the bottom land being subject to overflow and the upland being infested with Bermuda grass. According to this finding, the total damage sustained was $3,255. This amount only should have been deducted from $5,500, the face of the notes, and a judgment should now be rendered aginst appellees and the land for that difference, less $1,640.52 which they paid the representative of the estate of Henry Moore.

For the error indicated the decree is reversed, and the cause is remanded with directions to render a judgment against appellees for $604.48, and to decree a foreclosure against the land for said amount.