ROCKFORD TRUST COMPANY *v.* PURTELL.

Opinion delivered June 1, 1931.

*Lake, Lake & Carlton,* for appellant.

*Jas. S. McConnell,* for appellee.

SMITH, J. The facts out of which this litigation arose, while somewhat complicated, are practically undisputed, and are to the following effect.

The Rockford Trust Company, as administrator of the estate of Mrs. Martha Smith, brought suit to foreclose a mortgage executed on March 13, 1924, by O. P. Purtell and wife to the Guthrie Mortgage Company. The mortgage was given to secure a loan of $1,200, evidenced by a principal note for that amount, due December 1, 1933, with 10 per cent. interest coupons attached thereto. The mortgage was upon the usual conditions, and contained an accelerating clause, giving the holder of the note the right to declare it due upon the failure to pay any installment of interest. The mortgage was duly filed and recorded March 25, 1924.

The mortgage company made an assignment of the note by an indorsement in blank on the back thereof. There was also executed a separate assignment of the mortgage to an assignee named as........................ The date of the assignment of the mortgage was June 16, 1924. This assignment was not acknowledged, and was never recorded.

The indorsed note, together with an abstract of the title to the lands embraced in the mortgage brought down to June 20, 1924, and the original application of Purtell to the mortgage company for the loan, came to the hands of Fred J. Sovereign in the city of Rockford, Illinois, and he, on February 4, 1925, sold and assigned the note to Mrs. Martha Smith and delivered it to her with the other instruments referred to. She paid the face of the note and the accrued interest thereon for the note, and had it in her possession at the time of her death February 20, 1929. Interest payments were made up to December 1, 1927, when default was made, and as subsequent payments had not been made, the administrator of the owner has exercised the option of declaring the entire debt due. There was a prayer for a judgment for the amount of the note, with interest, and for a decree of foreclosure. Certain persons were made parties defendant whose interests were acquired in the following manner.

On February 27, 1924, Purtell, the grantor in the mortgage which the trust company sought to foreclose, executed and delivered to J. F. Cannon a mortgage whereby he conveyed to Cannon the lands described in plaintiff's mortgage, to secure a note payable to Cannon for $832.42. Thereafter, to-wit, on June 20, 1924, the Guthrie Mortgage Company executed and delivered to Cannon its promissory note for $1,200, due forty-five days after date, and also executed and delivered to Cannon at the same time an assignment of the Purtell mortgage, which is the same mortgage that plaintiff trust company sought to foreclose by this suit. In consideration of the execution and delivery to Cannon of the mortgage company's note and the assignment of the Purtell mortgage, Cannon released the mortgage which Purtell had executed to him in February, 1924, by a release deed dated June 20, 1924, which was filed for record on the same date. This release deed was shown in the abstract of title which was delivered by the mortgage company to Sovereign, and by Sovereign to Mrs. Smith.

The assignment to Cannon of the Purtell mortgage by the Guthrie Mortgage Company, which was dated June 20, 1924, and recited the consideration to be $1,200 cash in hand paid, was duly acknowledged, and was filed for record July 1, 1924. Cannon received only the assignment of the mortgage and did not receive the note which it secured.

No indorsement of any kind was ever made upon the margin of the record where the mortgage here sought to be foreclosed was recorded.

Cannon brought a suit, in which he alleged that the execution of the release deed, whereby he canceled the mortgage executed to him by Purtell, had been procured by fraud, and that the consideration therefor had failed, and he prayed that his release deed be canceled, and that the original mortgage from Purtell to him be foreclosed. An intervention was filed in this cause by C. E. Coleman, who had become the owner of a second mortgage which

Purtell had executed. There were no parties to this suit except Cannon, plaintiff, Purtell, defendant, and Coleman as intervener. In that cause it was decreed on June 2, 1927, that the release deed had been obtained without consideration, and it was canceled, and the foreclosure of the original mortgage from Purtell to Cannon was ordered. Pursuant to this decree of foreclosure, a commissioner of the court sold the land to one L. B. Hill, who, upon the approval of the sale by the court, received a commissioner's deed, and Hill and his vendees were made parties defendant to the foreclosure suit brought by the trust company, it being prayed that the conveyances to them be canceled as clouds upon the title.

Upon the final submission of the cause a decree was entered, from which is this appeal, to the effect that the plaintiff trust company, as administrator of Mrs. Smith's estate, should have judgment against Purtell for the amount of the note, but that the cause should otherwise be dismissed as being without equity, and that the lien of the mortgage sought to be foreclosed should be canceled, thus leaving in full force and effect the decree and the proceedings thereunder whereby Cannon canceled his release of the mortgage to himself from Purtell and obtained a decree of foreclosure of that instrument.

The action of the court in refusing to decree the foreclosure of the mortgage bought by the plaintiff's intestate, and in cancelling it is defended upon the authority of § 4 of act 374 of the Acts of 1917 (page 1805), which appears as § 7394, Crawford & Moses' Digest.

Act 374 of the Acts of 1917 is entitled, "An act to regulate the manner of renewing or extending time of payment of debts secured by mortgages, deeds of trust, or vendor's liens the operation of the statute of limitations thereon, and prescribing the manner in which transfers of mortgages and liens and satisfaction thereof shall be noted of record."

The history of act 374, and the purpose of its enactment, is recited in the opinion in the case of *Kinney* v.

*North Memphis Savings Bank,* 178 Ark. 716, 11 S. W. (2d) 486.

By § 1 of the act of 1917, which became § 7382, Crawford & Moses' Digest, it is provided that no agreement for the extension of the date of maturity of a note secured by a mortgage or other liens there named, whether in writing or not, shall, so far as it affects the rights of third parties, operate to extend the statute of limitations unless a memorandum showing such extension be indorsed on the margin of the record where such instrument is recorded.

Section 2 of the act, which became § 7399, Crawford & Moses' Digest, gives to any person who, according to the face of the record, is the owner of any of the liens mentioned the right to satisfy the liens of record by indorsement on the margin of the record where the instrument is recorded, and provides that when this is done a subsequent purchaser, mortgagee or judgment creditor is protected against such liens "unless there shall appear on the margin of the record where such instrument is recorded a memorandum showing that the said mortgage, deed of trust, vendor's lien, lien retained in deed or note, or other evidence of indebtedness secured thereby has been transferred or assigned, which said memorandum shall be signed by the transferrer or assignor, giving the name of the transferee or assignee, together with the date of such transfer or assignment, said signature to be attested and dated by the clerk." There follows in this section the proviso that when this memorandum is indorsed upon the margin of the record, satisfaction of the record can only be made by the transferee.

Section 3 of the act of 1917, which became § 7400, Crawford & Moses' Digest, provides the manner in which the liens there named may be discharged and satisfied of record.

Section 4 of the act, which appears as § 7394, Crawford & Moses' Digest, is in the nature of a proviso to the preceding three sections, which imposed certain duties

and provided certain hazards for noncompliance therewith. Section 4 recites that nothing in the preceding sections shall prevent the sale, transfer, or assignment of the liens mentioned by a separate instrument, duly acknowledged and recorded, and imposes upon the clerk and recorder, at the time of recording such separate instrument the duty of noting, on the margin of the record of the original instrument, a memorandum showing that the lien contained in such instrument and the notes or other instruments evidenced thereby have been transferred, and to whom transferred, with the date of the transfer and the book and page where such instrument was recorded, but to this is added the proviso that the failure of the clerk to make such marginal entry or notation shall not invalidate the sale, transfer or assignment recorded as therein provided.

In other words, as applied to the facts of this case, § 7394, Crawford & Moses' Digest, does mean that a lien holder, by a separate instrument, duly acknowledged and recorded, may transfer the lien, and that, while it is the duty of the recorder to indorse, upon the margin of the assigned instrument, the date of the transfer and the name of the party to whom transferred and the book and page where such assignment has been recorded, the failure of the clerk to discharge this ministerial duty shall not invalidate the transfer. But the act does not undertake to change the law on the subject of the assignment of negotiable instruments.

Here Cannon took, by a separate instrument, an assignment of the mortgage, which did recite that the debt secured by the mortgage was also assigned, but it is to be remembered that this debt was a negotiable note, which was not indorsed or delivered to Cannon. The note was not therefore transferred, the recital of the assignment to the contrary notwithstanding. There is nothing in § 7394, Crawford & Moses' Digest, to change the law in regard to the transfer of title to a negotiable note. The law on that subject appears in the Negotiable Instrument Act. Sections 7796 and 7797, Crawford & Moses' Digest.

Section 7796 reads as follows: "An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer, it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery."

Section 7797 of the same chapter provides how an indorsement shall be made, and it reads as follows: "The indorsement must be written on the instrument itself or upon a paper attached thereto. The signature of the indorser, without additional words, is sufficient indorsement."

Cannon did not take the note which the assigned mortgage secured by indorsement or by delivery. On the contrary, the note was indorsed in blank by the payee and in due course was delivered to plaintiff's intestate. She, and not Cannon, took title to the note. Of course as she did not require the performance of the provisions of the act of 1917, she held the note subject to the peril of having her lien defeated by a satisfaction thereof entered on the margin of the record by the mortgage company, the owner of record of the lien, but this was not done.

The question for decision is therefore just this, who is entitled to the benefit of the mortgage lien? Does it inure to the benefit of the legal holder and owner of the note which the mortgage secures but who did not have the fact of her purchase noted upon the margin of the record? Or does it inure to the benefit of one who took an assignment reciting that the mortgage and the debt it secures was transferred, yet who did not take the instrument evidencing that debt, to-wit, a promissory note?

In the case of *Troyer* v. *Cameron*, 160 Ark. 421, 254 S. W. 688, the payee in certain negotiable notes had transferred them as collateral security for a loan, and, while they were so held, he undertook, by a separate written assignment, to transfer his interest in the notes to another, so as to constitute his assignee an innocent pur-

chaser under the Negotiable Instrument Act. It was there said: "The notes were payable to order, and to have negotiated them it was necessary for Fensler" (the payee) "to indorse them by writing his name on the instrument itself, or upon a paper attached thereto, and to deliver them. Section 7796-7798, Crawford & Moses' Digest. This was not done. At the time of the attempted assignment the notes were in possession of Henry Moore, who held them as collateral security. Fensler was not in possession of them, and could not negotiate them within the meaning of the negotiable instrument law."

Here the debt secured was a twelve hundred dollar note, with interest coupons attached, payable to the mortgage company: and, while the mortgage company's assignment to Cannon recited that it had transferred this debt to him, it did not do so in fact, because that debt was a negotiable note, which the mortgage company did not indorse or deliver to Cannon.

The writing which evidenced the debt, a negotiable note, was acquired by plaintiff's intestate before its maturity and for full value by indorsement and by delivery, and, as an incident to the ownership thus acquired, there was also acquired the benefit of the mortgage which secured the note, subject, however, to the hazard of having that right destroyed by a satisfaction of the lien by the record owner thereof, no indorsement having been made upon the margin of the record of the transfer of the note.

In the case of *Carpenter* v. *Longan*, 83 U. S. 313, 21 L. Ed. 271, Mr. Justice SWAYNE, speaking for the Supreme Court of the United States, said: "The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity. *Jackson* v. *Blodget*, 5 Cow. 205; *Jackson* v. *Willard*, 4 Johns. 43." It was there further said: "The transfer of the notes carries with it the

security, without any formal assignment or delivery, or even mention of the latter. If not assignable at law, it is clearly so in equity. When the amount due on the note is ascertained in the foreclosure proceeding, equity recognizes it as conclusive, and decrees accordingly. Whether the title of the assignee is legal or equitable is immaterial. The result follows irrespective of that question. The process is only a mode of enforcing a lien.

"All the authorities agree that the debt is the principal thing and the mortgage an accessory. Equity puts the principal and accessory upon a footing of equality, and gives to the assignee of the evidence of the debt the same rights in regard to both. There is no departure from any principle of law or equity in reaching this conclusion. There is no analogy between this case and one where a chose in action, standing alone, is sought to be enforced. The fallacy which lies in overlooking this distinction has misled many able minds and is the source of all the confusion that exists. The mortgage can have no separate existence. When the note is paid, the mortgage expires. It cannot survive for a moment the debt which the note represents. This dependent and incidental relation is the controlling consideration, and takes the case out of the rule applied to choses in action, where no such relation of dependence exists. *Accessorium non ducit, sequitur principale.*"

Our own cases are to the same effect. In *Pullen* v. *Ward,* 60 Ark. 90, 23 S. W. 1034, after quoting in part with approval the language above quoted from the Carpenter case, Mr. Justice BATTLE said: "In this case the note and lien stand in the same relation. They are as inseparable as the note and mortgage. As in the latter case, the note is the principal and essential thing, and the lien the accessory and incident. The lien passes with the transfer of the note, and expires when it is paid. The lien (a vendor's) is, in effect, a mortgage, and, like it, passes to the assignee of the note, it being negotiable, freed from any defense the maker (Pullen) had against it

in the hands of the vendor." See also *Smith* v. *Butler,* 72 Ark. 350, 80 S. W. 580; *Hebert* v. *Fellheimer,* 115 Ark. 366, 171 S. W. 144; *Graves* v. *First National Bank of Bentonville,* 126 Ark. 177, 189 S. W. 664; *Beard* v. *Bank of Osceola,* 126 Ark. 420, 190 S. W. 849; *Hankins* v. *Merchants' & Planters' Bank,* 161 Ark. 221, 255 S. W. 916.

We conclude therefore that plaintiff's intestate acquired the benefit of the mortgage lien by her purchase of the debt which it secured, and that, as Cannon did not acquire the note which the mortgage secured, neither he nor those claiming through him are entitled to enforce the lien of the mortgage. Therefore the right of the plaintiff's intestate to enforce the lien of this mortgage is not affected by the decree wherein it was adjudged that Cannon's release deed be canceled and the mortgage to him from Purtell be foreclosed, as plaintiff's intestate was not a party to that litigation.

The decree of the court below will therefore be reversed, and the cause remanded, with directions to enter a decree conforming to this opinion.