LEHMAN *v.* FIRST NATIONAL BANK IN ST. LOUIS.

4-3536

Opinion delivered October 1, 1934.

*W. A. Jackson* and *Tom W. Campbell,* for appellants.

*George H. Steimel, Frauenthal & Johnson* and *Walter L. Pope,* for appellees.

SMITH, J. On June 16, 1930, the Randolph State Bank borrowed $30,000 from the First National Bank in St. Louis, and as collateral therefor indorsed and delivered to the St. Louis Bank notes payable to the order of the Randolph State Bank for about twice that amount. Among the notes so indorsed and delivered was one executed by R. C. Lehman, which was secured by a deed of trust describing six lots owned by Lehman situated in the towns of Hoxie and Walnut Ridge. Lehman's note was not due at the time of its indorsement and delivery to the St. Louis bank as collateral security.

Ben A. Brown, who is a brother-in-law of Lehman, was an active vice president of the Randolph State Bank, and was the trustee in the deed of trust which Lehman had executed. Dr. J. W. Brown, the president of the

Randolph State Bank, testified that Ben A. Brown had made the loan to Lehman against the will of the board and the loan committee, and that the loan was not regarded as a satisfactory one.

Ben A. Brown took up with the president of the Randolph State Bank and with Judge J. L. Bledsoe, a director in and the attorney for that bank, the question of releasing from the deed of trust one of the lots described therein as lot 1, block 19, in the town of Hoxie, and in that connection made the following representations to the bank's president and attorney: That this lot 1 was vacant and unimproved, and that Lehman had an opportunity to make an advantageous lease of this lot for a filling station, but that the lease could not be made unless the lot was released from the deed of trust, but that, if it were released, the lease itself would be assigned to the bank, and a new deed of trust would be executed subordinate to the lease. As a matter of fact, lot 1 was not vacant but had a brick garage on it.

There is a conflict in the testimony as to these representations, but we think the testimony clearly established the facts as above stated.

There is a controversy also as to whether Ben A. Brown, in repeating these representations to the president of and the attorney for the bank was acting as Lehman's agent. We think he was if it is of any importance to decide that question, and the effect of the representations is the same as if Lehman himself had made them directly to the president of and attorney for the bank. "One is liable for his agent's fraud and misrepresentations within the apparent scope of his employment, whether he authorized or knew of them or not." *DeCamp* v. *Graupner*, 157 Ark. 578, 249 S. W. 6.

There was no other consideration for the release of this lot 1 from the deed of trust, and the president, thinking to improve the security of the bank, consented to the preparation of a release of the lot by the bank's attorney. The release was prepared and executed and later recorded. After the execution of the release a lease was executed by Lehman to O. K. Wing, as trustee, which lease was duly assigned by the lessee to the Phillips Petroleum

Company. Thereafter Lehman conveyed this lot 1 to his wife, subject, of course, to the outstanding lease. Lehman and his wife testified that the consideration for the deed from him to her was the partial payment of a debt which Lehman owed his wife.

The Randolph State Bank became insolvent and closed its doors without repaying all of its loan to the St. Louis Bank. Upon the maturity of the Lehman note, payment thereof was demanded, and, upon refusal or failure by Lehman to pay, suit was brought by the St. Louis bank to foreclose the deed of trust given to secure Lehman's note.

There had been no notation upon the margin of the record where the deed of trust was recorded showing that the note which it secured had been transferred or assigned when the release deed was executed on September 13, 1930, but the note had been indorsed and delivered to the St. Louis Bank as above stated, and was in the possession of that bank as collateral when the release deed was executed. The St. Louis bank was not advised of and did not consent to the execution of the release.

Separate answers were filed by Lehman and his wife. He admitted the execution of the note, and did not question the amount due on it, but he alleged that the release had been executed without fraud or misrepresentation on his part, and that he had conveyed the lot for full value to his wife. Mrs. Lehman alleged that she was a subsequent purchaser of the lot within the meaning of § 7399, Crawford & Moses' Digest, and that she had accepted the deed from her husband in good faith in part payment of a debt due from him, and gave testimony to support those allegations.

The court held, in effect, that Mrs. Lehman was not a subsequent purchaser within the meaning of § 7399, Crawford & Moses' Digest, but that the petroleum company—the assignee of the lease—was, and decreed the cancellation of the release except in so far as it affected the lease, which was held to be valid. Judgment was rendered against Lehman for the balance due on the note, and the deed from him to his wife was canceled, and it was held that the deed of trust was a subsisting lien

against lot 1, and the foreclosure of the deed of trust was ordered, subject to the lease held by the petroleum company.

An appeal has been duly prosecuted from so much of the decree as holds, in effect, that Mrs. Lehman is not a subsequent purchaser within the meaning of § 7399, Crawford & Moses' Digest.

It was shown by the testimony of a real estate agent that the value of all the lots described in the deed of trust was only $4,725, and that the present value of lot 1 was $2,500, leaving property worth only $2,225 to secure a debt of more than $5,000 if lot 1 is excluded.

It was shown by the testimony that the loan evidenced by the note was made to Lehman alone, and that his wife had not obligated herself to pay it, but it was shown also that she joined in the execution of the deed of trust here sought to be foreclosed.

It is not contended that Mrs. Lehman was under the apprehension that the note had been paid, nor is it contended that she advanced to the Randolph State Bank any consideration for the execution of the release deed.

There was testimony at the trial from which this appeal comes to the effect that the St. Louis bank had become the owner of the Lehman note through a public sale thereof, but it is contended that it was not shown that there was such a sale as operated to pass the title thereto.

We do not think it essential to determine this question. The St. Louis bank holds the note either as owner or as pledgee, and the law is well settled that, when the owner of securities pledges them to secure the payment of his own debt, he impliedly transfers the right to the remedies which will make the securities available for the payment of his debt in case of his own default. Chapter on Pledge, 21 R. C. L., page 666. We held, in the recent case of *Leonard* v. *Taylor*, 183 Ark. 936, 39 S. W. (2d) 704, that: "The holder of the pledge has a special ownership therein to the extent of the debt secured thereby, and may proceed to enforce it if it be a chose in action, a negotiable instrument, or any of a like nature."

Appellants make no contention that the assignment of the Lehman note to the St. Louis bank as a part of the collateral to secure the note executed to it by the Randolph State Bank did not automatically effect an assignment of the lien of the deed of trust securing the Lehman note. That such was its effect has been many times decided. Among the latest cases to that effect are those of *Fullerton* v. *Storthz,* 182 Ark. 751, 33 S. W. (2d) 714, and *Rockford Trust Co.* v. *Purtell,* 183 Ark. 918, 39 S. W. (2d) 733.

The controlling question to be considered is the effect of § 7399, Crawford & Moses' Digest, as applied to the facts of this case. This section gives any person who, according to the face of the mortgage record, is the owner of any of the liens there mentioned the right to satisfy the liens of record by indorsement on the margin of the record where the instrument is recorded, and provides that, when this is done, a subsequent purchaser, mortgagee, or judgment-creditor, is protected against such liens "unless there shall appear on the margin of the record where such instrument is recorded a memorandum showing that the said mortgage, deed of trust, vendor's lien, lien retained in deed or note, or other evidence of indebtedness secured thereby has been transferred or assigned, which said memorandum shall be signed by the transferrer or assignor, giving the name of the transferee or assignee, together with the date of such transfer or assignment, said signature to be attested and dated by the clerk."

Section 7400, Crawford & Moses' Digest, provides that the lien may also be discharged "by separate release deed or instrument duly executed, acknowledged and recorded, which instrument, when so recorded, shall be of the same effect as a marginal entry."

Now, as has been said, there was no indorsement on the margin of the record showing that the note there secured had been assigned, and it is therefore insisted that Mrs. Lehman acquired title to lot 1 as a subsequent purchaser discharged from the lien of the deed of trust.

We do not think so. In our opinion, the case of *Vance* v. *White,* 180 Ark. 470, 21 S. W. (2d) 853, an-

nounces the principle which controls here. The facts in that case were as follows: Brandon & Baugh sold a tract of land to Jeff White, and in part payment took a note secured by a vendor's lien. Brandon & Baugh indorsed and delivered the note, before its maturity, to Mrs. Vance as security for a debt due by them to her. While the note was so held by Mrs. Vance, the maker thereof died, and the note was paid to Brandon & Baugh by White's son. No indorsement of the transfer of the note had been made on the margin of the record when Brandon & Baugh made the marginal indorsement that the note had been paid. In holding that § 7399, Crawford & Moses' Digest, did not apply, we said: "The rights of no such person" (subsequent purchaser) "have intervened here. If the original grantee in the deed reserving the vendor's lien were living, he would not be heard to say that he had paid the amount of his note to a person who did not own it, and was not in possession of it when he made the payment, and had thereby discharged the lien which secured the note. Nor can his heirs."

Here there was no payment of or upon the secured note, and the release was obtained, not for a valuable consideration, but upon the false representation that the lot was vacant, when, in fact, it was one upon which there was a building of value. Moreover, Mrs. Lehman as well as her husband was one of the makers of the deed of trust. She may not therefore claim to be a subsequent purchaser within the meaning of § 7399, Crawford & Moses' Digest, through the fraudulent representation of her husband, who had joined with her in the execution of the deed of trust.

The decree of the court below is correct, and will be affirmed. It is so ordered.