HARRIGAN E. WORTSMITH ET UX *v.*
THE MATTHEWS CO.

5-5033                                         447 S. W. 2d 342

Opinion delivered December 1, 1969

*Charles L. Carpenter,* for appellants.

*Charles D. Matthews* and *Catlett & Henderson,* for appellee.

CONLEY BYRD, Justice. Appellants Harrigan E. Wortsmith and Catherine Wortsmith are the owners of Lot 28, Block 52, Lakewood Addition to the City of North Little Rock. They brought this action against appellee, The Matthews Company, to enjoin a 1968 replat of Lots 9 through 12 of said Block allegedly for the violation of the restrictive covenants contained in a bill of assurance dated February 2, 1965. The trial court dismissed the complaint upon a motion for summary judgment. For reversal they rely upon the following points:

> "A. Appellee did not have approval of owners of sufficient acreage to amend bill of assurance and plat in effect on Lots 9-12, Block 52, Lakewood, when appellants bought their property.

"B. Appellee offered no pleading or proof that change did not violate North Little Rock zoning code.

"C. Appellee offered no pleading or proof that conduct of appellee did not mislead and defraud appellants and other similar persons."

The record shows that said Block 52 was not all platted at the same time. The portion containing Lot 28, being Lots 19 through 31, was platted and the bill of assurance in connection therewith was recorded on Sept. 9, 1963. The portion involving Lots 9 through 12 was platted and the bill of assurance was recorded on February 2, 1965. Appellants purchased their property subsequent to the filing of the February 2, 1965, bill of assurance. The Matthews Company caused Lots 9 through 12 to be replatted in April 1968 to lay out an alley or private way across the back thereof. The rear of Lot 9 backs up to the rear of Lot 28.

The February 2, 1965, bill of assurance that appellants are attempting to enforce provides:

"KNOW ALL MEN BY THESE PRESENTS:

"That John Matthews Company, an Arkansas Corporation, hereinafter called grantor, owns the following described land lying in Pulaski County, Arkansas, to-wit: that part of the unplatted part of

SW¼ OF NE¼ AND N½ OF SE¼, SECTION 24, TOWNSHIP 2 NORTH, RANGE 12 WEST, AND LOT 11, BLOCK 52, LAKEWOOD, PULASKI COUNTY, ARKANSAS

shown on the plat attached hereto and made a part hereof as LOTS 9 TO 13, INCLUSIVE (LOT 9 BEING A REPLAT OF THE LOT PREVIOUSLY PLATTED AS LOT 11), BLOCK 52, LAKEWOOD

and the grantor hereby plats same as

LOTS 9, 10, 11, 12 AND 13, BLOCK 52, LAKE-
WOOD, PULASKI COUNTY, ARKANSAS

and henceforth description and conveyance by such
designation or part thereof as shown and represent-
ed on said attached plat shall be a proper and suf-
ficient description thereof.

\* \* \*

"Said land herein platted and any interest therein
shall be held and owned subject to and in conformi-
ty with the following covenants which, subject to
being amended or canceled as provided hereinafter,
shall be and remain in full force and effect until
January 1, 1999, to-wit:

(a) LAND USE AND BUILDING TYPE. Said
land shall be restricted to detached single-family
residence; garage, servants' quarters, and other
outbuildings must be clearly incidental to residen-
tial use of said land. Boarding houses, tenements,
apartment houses, trailer parks, tourist courts, mo-
tels, hotels, eating houses, clubs, restaurants, stores,
beauty shops, barber shops, commercial servicing
and repairing of every kind, other similar activities
and each of them are prohibited and shall not be
carried on or permitted on any part of said land.
The designation of such specific activities prohibit-
ed shall not limit what is prohibited on said land
but this restriction shall be construed to prohibit
on said land each and every business, trade, activi-
ty, and undertaking not in keeping with the general
plan to develop said land for the highest class resi-
dential occupancy. No business, trade, activity, or
undertaking which is or may become noxious or of-
fensive shall be carried on or permitted on any part
of said land nor shall anything be done thereon
which may be or become an annoyance or nuisance
to adjacent residents or the neighborhood. Usage
in keeping with the highest class residential occu-

pancy such as the office of a doctor, a writer, or an artist shall be permitted if carried on without becoming an annoyance or nuisance to adjacent residents or the neighborhood and provided one name plate only, not exceeding one square foot in area, may be placed or permitted to remain on any homesite.

(b) PLOT AREA AND WIDTH. No residence shall be erected, altered, or permitted to remain on any part of said land or on part of said land and adjacent land if the area of the plot of ground for and used with such residence is less than 7,000 square feet or if the width thereof at the front building line is less than 65 feet.

(c) TEMPORARY STRUCTURES. No trailer, basement, tent, shack, garage, garage apartment, hutment, barn, structure of a temporary character, or outbuilding of any kind on said land shall at any time be used or occupied as a residence temporarily or permanently, provided the foregoing shall not be construed to prevent occupancy of servants' quarters by bona fide domestic servants employed by and domiciled on said land with an owner or tenant.

(d) ARCHITECTURAL CONTROL. No building, wall, or fence shall be erected or placed on said land until complete building plans, specifications, and plot plan showing the location thereof with respect to existing topography and finished ground elevations have been approved in writing by said John Matthews Company, its successors or assigns. It is contemplated that said John Matthews Company, in its discretion, may eventually designate and authorize the Property Owners' Association or incorporated town or city of the area involved to make such approval but until and unless said John Matthews Company, its successors or assigns,

transfers this authority, then it, the said John Matthews Company, shall have complete authority with respect to such approval. It is the purpose and intent of this covenant that, in order to assure all home owners the safeguard of a reasonable degree of neighborhood conformity and harmony, the quality, design, and location of all residences be regulated as provided hereinbefore. In the event said John Matthews Company, its successors or assigns, fails to approve or disapprove any such plan and specifications within 30 days after submission to it or, in any event, if no suit to enjoin the erection or placing of such residence has been commenced prior to the completion thereof, such approval will not be required and this covenant will then be deemed to be fully complied with. There shall be no compensation to said John Matthews Company, its successors or assigns, for services performed pursuant to this covenant.

(e) SIGNS OR UNSIGHTLY OBJECTS. No billboard, poster, sign, or object of unsightly nature shall be placed or permitted to remain on any part of said land, except a name plate not exceeding one square foot in area as provided in paragraph (a) hereof and except one sign only per lot not exceeding four square feet in area may be displayed to advertise property for sale or rent.

Each and all of the restrictions set forth herein shall be binding as covenants on present and future owners, their heirs, successors, and assigns, shall run with the land, and may be enforced by any person or corporation owning land in the area described as follows:

Platted or unplatted lands in the over-all area described in a Dedication setting up a proposed Property Owners' Association, appearing of record in the office of the Recorder, Pulaski County, Ar-

kansas in Deed Record Book 362, Page 425, AND E½ OF SW¼ AND W½ OF SE¼ AND SE¼ OF SE¼, SECTION 13, TOWNSHIP 2 NORTH, RANGE 12 WEST AND W½ OF NW¼, SECTION 19, TOWNSHIP 2 NORTH, RANGE 11 WEST, PULASKI COUNTY, ARKANSAS, but no person or corporation shall be liable for breaches committed except during his or its ownership. Any and all of the covenants set forth in this instrument may be amended, modified, extended, changed, or canceled in whole or in part by a written instrument signed and acknowledged *by the owners of over 50% in area of the land last hereinbefore described* and the provisions of such instrument so executed shall be binding beginning with and after the date it is duly filed for record in Pulaski County, Arkansas.'' [Emphasis ours].

Appellants' allegation, as abstracted, is:

''. . . that at the time the property was acquired by Appellants, and at the time Appellee surrendered title to Lot 28, all of the Bills of Assurance covering all the pertinent parts of Block 52 prohibited any activity or undertaking that could become noxious or offensive and that nothing could be done on said land that could become an annoyance to the adjacent property owners; that at the time Appellants acquired Lot 28 it was contiguous to Lot 9 and the Bills of Assurance on file made it clear that there could be no public way running between Lots 25-28 on the East side of Block 52 and Lots 9-12 on the West Side; that the lots on the East side of Block 52 were set up to have a rear yard privacy typical of the higher class residential area; that Appellants constructed their home to take full advantage of this rear yard privacy; that the Bills of Assurance insuring this rear yard privacy, and upon which Appellants relied, were on file on all of Block 52 at the time Appellants ac-

quired their property; such Bills of Assurance had been approved by the North Little Rock Planning Commission; that this protection from annoyance and nuisance was designed by Appellee for the purpose of, and did command, a premium price on said lots.''

Point A: Appellants developed by interrogatories that the lands as shown by the dedication setting up a proposed property owners association in Deed Record Book 362, page 425, contained 800 acres plus. To this they add the 200 acres described as being in Sections 13 and 19 *supra,* to arrive at a total of 1,000 acres plus that covered by the last quoted paragraph of the bill of assurance. The interrogatories further developed that appellee only owned 357 acres of the 1,000 acres so described. Upon these premises appellants argue that appellee did not own more than 50% of the ''land last hereinbefore described'' as set forth in the bill of assurance for purposes of amending the same.

Appellee on the other hand submitted an affidavit that it owned more than half of the Lots numbered from 9 through 13 inclusive of Block 52. Based upon this it contends that pursuant to the language of the bill of assurance that the ''the land last hereinbefore described'' referred to Lots 9, 10, 11, 12, and 13 of Block 52 and that by virtue thereof they were entitled to amend the bill of assurance.

Even should appellants be correct in their interpretation of the ownership required to modify the covenants contained in the bill of assurance, the trial court here properly dismissed their complaint because a replat, such as here involved, is not prohibited by the covenants set forth in the bill of assurance.

With Points ''B'' and ''C'', we find no merit. The complaint as abstracted contains no allegations that appellee failed to comply with the North Little Rock zon-

ing code or that appellee's conduct in filing the bills of assurance constituted a fraud upon appellants and other persons similarly situated. A party seeking to set aside a decree of the trial court has the burden of showing that such issue was before the trial court. This appellants failed to do in accordance with our rules.

Affirmed.