E. K. RAGGE ET AL *v.* LEM C. BRYAN, RECEIVER

5-5319                                               458 S. W. 2d 403

Opinion delivered October 12, 1970

*Harold C. Rains, Jr.,* for appellants.

*Darrell Johnson,* for appellee.

JOHN A. FOGLEMAN, Justice. This case originated as an action to foreclose a real estate mortgage and a security agreement. In decreeing foreclosure, the chancery court held that appellants had not succeeded in showing that the note evidencing the debt secured was void for usury. We find that the preponderance of the evidence supports the chancellor's decree. We also find the court's holding that appellee had a right to foreclosure of the security agreement covering certain household furniture and equipment to be proper.

Appellants argue that the security agreement had never been assigned by Arkansas Loan and Thrift Co., the secured party named therein, to appellee, or to the corporation for which he was receiver. The note signed by appellants was payable to the Loan and Thrift Co. It contained a recital that it was secured by a mortgage on a lot in Van Buren and "Security agreement and

UCC on furniture as listed." The security agreement was signed by appellants. It bore the same date as that of the note—April 19, 1967. It recited the granting of a security agreement to secure the debt evidenced by appellants' promissory note for $14,886.66. The security agreement was in appellee's possession. It is undisputed that the real estate mortgage securing the debt and all notes and indebtedness described in and secured by it were assigned to Savings Guaranty Corporation by written assignment on April 20, 1967. This note was specifically described in the real estate mortgage. We have held that assignment of a note or debt automatically effects an assignment of an instrument or conveyance given as security therefor and confers upon the assignee all rights of the assignor. *Price* v. *Williams*, 179 Ark. 12, 13 S. W. 2d 822; *Robertson* v. *Robertson*, 231 Ark. 573, 331 S. W. 2d 102. The failure of either party to comply with Ark. Stat. Ann. § 85-9-405 (Add. 1961) did not affect the rights of appellee as against appellants. See *Lehman* v. *First National Bk. in St. Louis*, 189 Ark. 604, 74 S. W. 2d 773; *Rockford Trust Co.* v. *Purtell*, 183 Ark. 918, 39 S. W. 2d 733.

Appellants assert that the note and security instruments were void for usury for the following reasons:

1. a charge for credit life insurance included in the principal debt was an improper and erroneous charge;

2. a charge of $35 for appraisal of the property was improper;

3. various small charges listed as a part of the debt in a closing statement were not properly chargeable to appellants;

4. the note and mortgage were usurious upon their face.

We shall dispose of these assertions in reverse order of their listing.

The note bore interest at the rate of 10% per annum. It recited that it was payable in 144 equal monthly installments of $177.93. It was so described in the mortgage. Appellants produced a witness who was a systems analyst for a concern in data processing. His company furnished the amortization schedule to Arkansas Loan and Thrift Co. which constituted the basis for the statement of the amount of the installment payments shown in the note. He offered another schedule which showed this amount to be $177.91, or two cents per month less than shown on the previous schedule. He stated that both schedules were correct for a 10% interest rate, but that the later schedule was produced by a newer and larger computer than the one which was used for the first schedule. The more modern computer carried the decimals farther in rounding off to exact cents and was more accurate to that extent. A certified public accountant testified that in making computer calculations a monthly interest factor of .008333% is used for a true rate of .008333 1/3%. The trial court was justified in finding that the transaction was not usurious upon the face of the instruments on the basis of this testimony.

In connection with the point just discussed, appellants also argue that since they were furnished a payment book calling for monthly payments of $202.10 and they made seven payments in that amount, the transaction was usurious. We do not agree with this argument. The loan closing statement bearing the signatures of appellants in the files of Savings Guaranty Corporation showed the monthly payment on principal and interest to be $177.93. It also showed a monthly item of $24.17 for a credit life insurance escrow account. This was the amount which would have been required to accumulate $290, the amount of the annual premium on credit life insurance on E. K. Ragge, by the time the next premium payment became due. This requirement did not render the transaction usurious.

In determining whether a charge is usurious, all attendant circumstances must be taken into consideration. *Sammons-Pennington Company* v. *Norton,* 241

Ark. 341, 408 S. W. 2d 487. In order for such a charge to constitute usury, there must have been an intention upon the part of the lender to take or receive more than the maximum legal rate of interest. *Peoples Loan & Investment Company* v. *Booth,* 245 Ark. 146, 431 S. W. 2d 472. We have recognized that a properly maintained escrow account is not to be considered in testing a note and the interest thereon for usury. *Harris* v. *Guaranty Financial Corp.,* 244 Ark. 218, 424 S. W. 2d 355. The circumstances above set out indicate that the escrow account was properly maintained in anticipation of an obligation which would probably accrue. In the absence of any evidence that the lender would profit from the account or intended to apply the funds improperly to its own profit, we cannot say that there was any evidence of an intent to make a usurious charge by requiring this payment. Actually, when the first payment was made 54 days after it was due, $20 of this amount was applied toward the interest accruing in the interim rather than to the escrow account. This was actually $34.17 less than the additional interest accrued, according to Kenton W. McCarthy, the CPA who reviewed the account for appellee. McCarthy also testified that, during the period that appellants were making payments, appellee was entitled to a total of $2,867.66 interest but actually only credited $1,642.93 of the payments to interest. According to McCarthy only $149.19 went into this escrow account, and this amount was ultimately credited to the principal and interest due on the loan. In any event, we do not find that the evidence preponderates against the holding of the chancellor on this point.

The small charges of which appellants complain consist largely of an item of $7.50 on the current loan, shown as filing fees on the closing statement. This was explained by checks in the loan files in appellee's possession as having consisted of $5.75 for recording the financing statement, the real estate mortgage and a release of a prior lien. Another $1.50 was paid to Data Tronics, Inc. for an amortization schedule for appel-

lants.[1] This leaves an item of 25 cents unaccounted for. In view of the fact that, in advance of payment, recording fees must often be estimated, we are unwilling to say that appellee failed to properly account for this item as a part of the principal indebtedness.

Appellants also argue that the transaction was usurious because of charges of $12.50 for legal preparation and credit reports shown on a loan worksheet relating to an earlier loan to appellants by Arkansas Loan and Thrift Co., the balance of which was retired from the present loan. They contend that $3.75 of this amount was paid for recording and somehow arrive at an amount of $6.50, which they claim to be unaccounted for. We have carefully examined the abstract of the record and have been unable to find any suggestion in the record that appellants were contending that the first loan by Arkansas Loan and Thrift Co. was usurious. An issue cannot, even in trial de novo of an equity case, be first raised by appellant on appeal. *Wortsmith* v. *Matthews Company*, 247 Ark. 732, 447 S. W. 2d 342; *Anthony* v. *First National Bank of Magnolia*, 244 Ark. 1015, 431 S. W. 2d 267; *Angelletti* v. *Angelletti*, 209 Ark. 991, 193 S. W. 2d 330.

Even though E. K. Ragge testified that a $35 charge for an appraisal was not authorized by him and that no appraisal of the property was made, to his knowledge, it seems to be conceded that this charge was made in connection with the first loan. A report of the appraiser appears with the papers evidencing that loan. This matter does not seem to have been an issue in the trial court either. An objection to this testimony was made by appellee, but it seems that the chancellor never ruled upon it. Appellee testified that the file indicated that the previous loan was paid off on the basis of a rebate sheet. This sheet showed a reduction of the loan balance first indicated by more than $500. We do not know other terms of this loan or whether it may

---

[1]Although appellants denied that they ever received this schedule, a copy was introduced as Exhibit 1 to the testimony of E. K. Ragge on his direct examination as a witness for appellants.

have been purged of any usury, as we might, had its validity ever been an issue. To say the least, appellants never made any showing that called upon appellee to explain any item of the first loan.

This brings us to the charge that the credit life insurance premium was not part of the principal debt, but was properly an item of interest so that the transaction was usurious. The closing statement previously referred to included an item of $290 for credit life insurance. According to a copy of a certificate of insurance introduced by appellants, this was the annual premium.

Appellants first contend that the insurance was not in force because the policy was not valid unless countersigned by a duly authorized agent of National Life and Casualty Insurance Company, which issued the certificate. On the certificate introduced as an exhibit through E. K. Ragge, in the space provided for this signature, there were typed the letters "EAB, Jr." There was testimony that E. A. Bartlett, Jr., was an agent for the company. He was free to use any character, symbol, figure or designation he thought proper to adopt as a signature and be bound thereby, provided it was used as a substitute for his name. *Walker* v. *Emrich,* 212 Ark. 598, 206 S. W. 2d 769. A signature may be by initials only *Brown* v. *Grzeskowiak,* 230 Ind. 110, 101 N. E. 2d 639 (1951); *Greenland* v. *Carter,* 219 Iowa 369, 258 N. W. 678 (1935); *Gendzier* v. *Bielecki,* 97 So. 2d 604 (Fla., 1957); *In re Mack's Will,* 250 N. Y. S. 2d 177, 21 App. Div. 2d 505 (1964); Annot. 159 A. L. R. 253 (1945). Printing, typing or stamping a name in the place where a signature should appear is sufficient, if it is intended as a signature. *Leach* v. *Bald Knob State Bank,* 163 Ark. 91, 259 S. W. 3. *Lee* v. *Vaughan's Seed Store,* 101 Ark. 68, 141 S. W. 496, 37 L. R. A. (n.s.) 352 (and annot.), Annot. 171 A. L. R. 334 (1947). Appellants themselves alleged that the premium was paid to the insurance company. This allegation was supported by a canceled check in the loan files in the hands of the receiver. Under all the circumstances the insurance company could not well have accepted and retained this premium

and then contested the validity of the policy for lack of countersignature. See *Reliance Life Insurance Co. of Pittsburgh* v. *Pearson,* 178 Ark. 611, 12 S. W. 2d 21; *Insurance Company* v. *Brodie,* 52 Ark. 11, 11 S. W. 1016, 4 L. R. A. 458; 17 Appleman, Insurance Law and Practice 73, § 9442; 1 Couch on Insurance 2d 367, § 8:17; 44 C. J. S. 1089, Insurance, § 273; 43 Am. Jur. 2d 287, Insurance § 226.

Appellants next contend that Arkansas Loan and Thrift Co. was, in effect, insuring its own loan. This argument is based upon evidence that Bartlett was chief executive officer of the loan company, as well as an agent who signed policies for the insurance company. This testimony was elicited from appellee through appellants' examination of him. Appellee stated that the loan company and the insurance company were separate, although it appeared that the loan company had, at one time, acquired the insurance company, sold it and then reacquired it. We find no evidence to support appellants' argument, however, that Bartlett was the moving force in the insurance company and Savings Guaranty Co., as well as in Arkansas Loan and Thrift Co., or the recipient of profits from the insurance company.

Insurance premiums paid to a third party are proper charges when the borrower agrees to pay them or receives the policy and the benefits thereof and is not charged an excessive premium. *Winston* v. *Personal Finance Company of Pine Bluff,* 220 Ark. 580, 249 S. W. 2d 315. Credit life insurance premiums fall into the same category as other insurance premiums. *Lowrey* v. *General Contract Corp.,* 228 Ark. 685, 309 S. W. 2d 736. Application of a part of the principal to the payment of insurance premiums with the acquiescence of the borrower does not render a transaction usurious. *Hartzo* v. *Wilson,* 205 Ark. 965, 171 S. W. 2d 956.

While appellants argue that they had no knowledge of this insurance and did not agree to this charge, we cannot say that the chancellor's adverse holding was against the preponderance of the evidence. The papers

in appellee's files show that disbursements for credit life insurance premiums were made by Arkansas Loan and Thrift Co. to the same insurance company while the first loan was outstanding. The closing statement on the loan which is the subject of this litigation clearly provides for this premium as a part of the principal and for payments into the escrow account earlier mentioned. This closing statement bears signatures purporting to be those of appellants. The only one of the appellants who testified admitted that the signature looked like his. He could not be sure about his wife's signature. He admitted that it was possible that he signed the closing statement without noticing the credit life item. He doubted that he would have signed it in blank. The signatures on this document bear a striking resemblance to those of appellants on the note and security instruments. The copy of the certificate came into the hands of appellant E. K. Ragge in some manner since it was introduced into evidence through him. E. K. Ragge is a real estate broker and an insurance broker. He was surely not unacquainted with closing procedures on real estate loans and would not be expected to be so careless as to sign a closing statement in blank or to fail to account for the application of the proceeds of his loan. It would be normal to anticipate that he would be especially alert for insurance items. It seems obvious that these circumstances caused the chancelllor to reach the result he did.

While appellants argue that E. K. Ragge carried life insurance in the amount of $120,000, there is no indication of the identity of the beneficiary, or the owner of the policy or the availability of the proceeds of this insurance to this debt in case of Ragge's death while the loan was outstanding. There is not even an indication that the existence of this insurance was called to the attention of the lender. The only appraisal of the property in the record assigns a value less than the amount of the debt to the real estate. We cannot say that there was no need for this insurance, as appellants argue.

The decree is affirmed.