WILLIAMS *v.* HARRELL.

5-866                                    288 S. W. 2d 321

Opinion delivered March 26, 1956.

*Tompkins, McKenzie & McRae,* for appellant.

*Denman & Denman,* for appellee.

ED. F. McFADDIN, Associate Justice. This is a suit to recover a promissory note and other items of personal property.[1] Equity jurisdiction was invoked so that Herman Bonds, the maker of the note, could be enjoined from making direct payments until the conclusion of the litigation.

Appellant, Mrs. Clara Williams, brought the suit against appellee, Mrs. Nell Harrell, alleging: that appellant was the owner of the personal property and the $2,000.00 promissory note dated May 6, 1954, signed by Herman Bonds, and payable to Mrs. Williams; that Mrs. Williams left the note and property in her apartment in Prescott, Arkansas, and went to Texas on a trip; that, due to illness, she was unable to promptly return to Prescott; that in a long distance telephone conversation on June 6, 1954, she requested L. J. Harrell (husband of appellee, Mrs. Nell Harrell) to take charge of the note and other property for her as her bailee; that Mr. Harrell complied with Mrs. Williams' request and then died[2] while still having in his possession the note and some of the property; and that the appellee, Mrs. Nell Harrell, had possession of the note and property and refused to return any of it to Mrs. Williams. In her answer Mrs. Harrell admitted that she held the note

---

[1] Included were a television, an electric refrigerator, a lawn mower
[2] The date of Mr. Harrell's death was August 11, 1954.
and other articles, but the most of the evidence concerned the promissory note.

and some of the articles of personal property, but claimed that by the will of her husband, L. J. Harrell, she was given all of his property in fee simple, and that L. J. Harrell became the owner of the note and property in a final settlement between himself and Mrs. Williams.

A large portion of the evidence was directed to the affairs and business dealings between Mr. Harrell and Mrs. Williams. It was stipulated that on July 16, 1953, Mr. Harrell had sold his interest in the tourist court business to Mrs. Williams; but, even so, the evidence showed that Mrs. Williams continued to have various business and personal transactions with Mr. Harrell. Letters she wrote to him in June and July, 1954, substantiated the fact that she was getting money from him at those times.[3]  Mrs. Williams testified that she drew a check on May 12, 1954, to ''cash'' for $350.00 and paid Mr. Harrell all that she then owed him. The check bore the notation: ''To Lynne for city bills''; but after the photostatic records of the bank had been checked, it was finally stipulated that the quoted notation was *not* on the check when it went through the bank.

Mrs. Williams testified, just as her complaint alleged, that Harrell got the note out of her apartment on June 6, 1954, and was keeping the note for her and that she had never endorsed it. She claimed that she and Mr. Harrell had a final settlement out in the park in Texarkana[4] on the 28th of June, 1954, and that he had

---

[3] In one letter of July 16, 1954, Mrs. Williams thanked Mr. Harrell for $5.00 that he had just sent her and thanked him for paying certain bills for her in Prescott and also said that, if she went back to housekeeping, she wanted to use his refrigerator. In another letter, Mrs. Williams requested Mr. Harrell to make the monthly payment for her on her car; and it was shown that this payment was $150.00. In the same letter she referred to the refrigerator as being his. In another letter, Mrs. Williams said to Mr. Harrell: ''You keep a statement or an account of what you have paid of mine. . . . I want to know how much I owe you.''

[4] These questions were asked of Mrs. Williams: ''Q. When you paid him up in Texarkana you paid him in cash out in the park? A. Yes. . . . Q. Now you testified still later on the 28th of June you had a settlement with Mr. Harrell and where did that occur? A. In the park at Texarkana. Q. And did I understand you to say that he had the clipboard there at that time? A. Yes. Q. Was that the same clipboard that had the note and other miscellaneous bills on it? A. Yes, the note was not on there. Q. Did you have any conversation about the note, any discussion about the note at that time? A. The note hadn't entered my mind. . . .''

there the clipboard — on which she left the note in her apartment — and that the note was not then on the clipboard. She said she entirely failed to think about the note or get it back from Harrell. Her testimony, that she was able to repay Harrell on June 28th, is at variance with the letters that she wrote him wherein she said she was without funds. Mrs. Williams relied strongly on the fact that she had never endorsed the note; and contended that Harrell was a good business man and would have obtained her endorsement on the note if he had received it in any final settlement.

It had been shown that when the tourist court was sold to Mr. Herman Bonds, he paid $3,000.00 in cash and executed the note for $2,000.00. Mrs. Harrell and her witnesses testified that they heard a conversation between Mrs. Williams and Mr. Harrell at his place of business in Prescott the latter part of May or the 1st of June, 1954, in which Harrell said to Mrs. Williams: "I will take this note and you take the money and pay the bills." Also it was testified that on Mr. Harrell's books, under "Accounts Receivable," he had written in his own handwriting this notation: "1954, May, Note Herman Bonds, $2,000.00."

Thus the Chancery Court had to decide whether Mrs. Williams had surrendered the note to Harrell on June 1, 1954, or whether Mrs. Williams had left the note in her apartment, as she testified, and that Harrell got the note as her agent on June 6, 1954. The evidence was in hopeless conflict and there are many inconsistencies on each side. We omit many details, the recital of which would add nothing favorable to the reputation of the litigants. The Chancellor awarded the note and some of the personal property to Mrs. Harrell. Each side has appealed. We discuss, first, Mrs. Williams' direct appeal, in which are argued two assignments.

I. The appellant says:

*"The finding of the Chancellor is not only against the preponderance of the evidence. It is contrary to the stipulation filed in the case."*

It was stipulated that L. J. Harrell had sold all his interest in the tourist court and cafe to Mrs. Williams by bill of sale dated July 16, 1953; and " . . . it is further stipulated and agreed that there will be no evidence introduced at the trial of this cause, oral or documentary, relating in point of time prior to July 16, 1953 . . . for the purpose of proving any indebtedness owing by Clara Williams to L. J. Harrell or by L. J. Harrell to Clara Williams."

Appellant says that the Chancellor's memorandum opinion shows that in reaching his findings in this case he considered business dealings and relationships between L. J. Harrell and Mrs. Williams prior to July 16, 1953. It is true that the Chancellor mentioned earlier dealings and relationships, but these were not mentioned ". . . for the purpose of proving any indebtedness owing . . . ," which is the language of the stipulation. The references, that the Chancellor made to earlier dealings of the parties, were by way of recitals only, and were not determinative of his findings and conclusions. He was careful to point out that he based his findings on the credibility of the witnesses.

The fact that Mrs. Williams and Mr. Harrell had a financial settlement on July 16, 1953, did not alter the fact that they had many subsequent transactions and business dealings. Mrs. Williams' letters showed that she asked Mr. Harrell to make financial payments for her; and she admitted owing him money as late as her letters of July, 1954. The fact that Mrs. Williams insisted that a final settlement had occurred between her and Mr. Harrell in the park in Texarkana on July 26, 1954, shows that financial transactions arose after July 16, 1953. If she had a financial settlement with Mr. Harrell on July 28, 1954, why did she not get the note at that time? That is the question that Mrs. Williams was unable to answer. She brought this suit and had the burden that any plaintiff has in a replevin action, that is, to prove that the plaintiff is the owner and entitled to the possession of the items in litigation.[5] The Chan-

[5] See § 34-2101 et seq. Ark. Stats. and cases there cited.

cellor found that Mrs. Williams had not proved her right to prevail; and, in reaching that conclusion, he did not make any finding violative of the stipulation, and did not go contrary to the stipulation.

II.   Appellant says:

*"The note was not transferred, but if it were transferred, it was not transferred for value."*

If Mrs. Harrell's witnesses are right — and the Chancellor so found — then the note was transferred by Mrs. Williams to Mr. Harrell on the first of June, 1954, when Mrs. Williams and Mr. Harrell had the conversation testified to by four witnesses; and Mrs. Williams' admission of a settlement in the park in Texarkana on the night of July 28, 1954, and her failure to demand the note at that time, support the conclusion that Harrell had received the note as his own in the settlement on the 1st of June, 1954.

The fact that Mrs. Williams had not endorsed the note does not prevent it from having been transferred.   Sec. 68-149 Ark. Stats. provides:

"Where the holder of an instrument payable to his order, transfers it for value without endorsing it, the transfer vests in the transferee such title as the transferror had   .   .   ."

Some of our cases on that provision of the negotiable instruments law are: *Cureton* v. *Farmers State Bank,* 147 Ark. 312, 227 S. W. 423; and *McDonald* v. *Olla State Bank,* 192 Ark. 603, 93 S. W. 2d 325.

*Conclusion*: As previously stated, the decision in this case turns on the credibility of the witnesses.   The Chancellor saw the witnesses and heard them testify. We are asked to say that his findings are against the preponderance of the evidence; but a careful study of the entire record does not convince us that he was wrong in any respect.   Therefore we affirm the decree both on direct appeal and cross appeal.