Guy R. GRIFFITH et ux v. Mary K. GRIFFITH

5-5595                                           467 S. W. 2d 737

Opinion delivered June 7, 1971

*N. J. Henley,* for appellants.

*Ivan Williamson,* for appellee.

JOHN A. FOGLEMAN, Justice. Appellee is the mother of appellant Guy R. Griffith. Appellant Charlene Griffith is his wife and cotenant by the entirety in a tract of land in Stone County. Their appeal comes from a decree holding that the mother was the assignee of a note executed by her son and daughter-in-law in favor of one P. S. Hunt. The chancery court, however, refused to declare appellants delinquent on their payments and refused acceleration, judgment and foreclosure. Appellee appealed from that part of the decree denying foreclosure. Appellants urge two points for reversal, namely: that the chancery court erred in holding that appellee held the note as assignee of Hunt, and that there is no legal basis upon which appellee can be said to have a lien on appellants' lands. We find no merit in either contention.

The note for $2,163.92, payable to the order of P. S. Hunt, was dated July 16, 1969. It was payable in quarter-

ly installments of $200 beginning October 16, 1969, and continuing until the entire principal and interest at 10% per annum had been paid. Appellants paid the first installment. The debt was secured by a mortgage on the lands. Appellants, appellee and a daughter of appellee went to the home of Hunt on February 3, 1970. They did not find Hunt at home, but his wife was there. Appellee wrote a check payable to Hunt for the balance then due him. Mrs. Hunt marked the note paid in full, signing her husband's name.

Appellee's complaint contained allegations that she was a holder in due course of the note, that the transaction amounted to an equitable assignment of the note and mortgage to her and that Hunt inadvertently failed to formally assign them to her. Appellants defended on the ground that the payment of the debt by appellee was a voluntary gift to them by her. The chancellor made a finding of fact that the transaction was, in effect, an assignment to appellee and that the "paid in full" endorsement was in reality an assignment of the debt carrying with it the lien of the mortgage. We agree.

There was the usual and expected conflict in the testimony of the parties. Appellee testified that she paid Hunt at the request of her son, who had told her on the day before they went to Hunt's home that he would lose the place if he did not pay Hunt within two days. She said that appellants promised her, before she went to Hunt's to pay the debt, that they would start paying her in monthly payments as soon as Mrs. Charlene Griffith went to work, but that they had failed to make any payment. Appellee testified that "they gave me all those papers." She presented the note, mortgage and an abstract of title, and when she testified upon being examined as to whether her son promised to secure her by mortgage, she said that her son reiterated on the way home from Hunt's that appellants would pay her as soon as his wife went to work, and she added that she had "everything else they had on it" naming the mortgage and abstract specifically. When asked if Mrs. Hunt did not turn the note and mortgage over to "you all," appellee responded that she had every paper that the

Hunts had possessed. She said that they were turned over to her the day she paid the debt and that Mr. Hunt had not complained about his wife delivering the note and mortgage to her. She denied that she made a gift to appellants by this transaction.

A 16-year-old son of appellee, brother of Guy, testified that Guy tried to borrow $500 from him to apply on the mortgage to Hunt and that he was present on one occasion when Guy asked their mother for money to pay Hunt. A daughter of appellee, sister of Guy, testified that she knew that Guy came and asked their mother to pay the debt to keep Hunt from taking the land and promised that appellants would repay her in monthly payments as soon as Charlene Griffith went back to work. This witness was present when the payment was made, and her car was used to transport the family to Hunt's house. She quoted appellant Guy Griffith as having said that if he lost the place, he would prefer his mother would get it rather than Hunt.

Guy Griffith testified that he had the money to make the second payment when his mother got some insurance money and volunteered to pay off the debt, without any agreement on the part of appellants to repay her. He also said that his mother never indicated that she expected repayment until other difficulties arose between them, after which she filed the present action. He denied that he had been having any financial difficulties. He also denied any attempt to borrow from his younger brother. He said that his wife was not working at the time of the payment but was employed at the time of the trial. He claimed that Mrs. Hunt had given him the note and mortgage and that he had left them on the dashboard of his mother's car. He stated that he asked his mother for the instruments on the following Saturday night, but that she refused to give them to him, saying that they were in a safety deposit box in Louisiana. She responded to a later demand on his part, he said, by saying that a Little Rock attorney was holding the papers.

Charlene Griffith testified that she never agreed to pay any money to appellee on this debt. She said that her mother-in-law refused to let Guy have the papers when he decided to go into the hog business and wanted to borrow more money from Hunt. Another child of appellee testified that she went along when the payment was made but stayed in the car. She said that her mother had given her $825 of the insurance money and had said that she wanted to help her children pay their bills. One Lela Rushing testified that appellee told the witness that she had helped the children to the extent of $3,000 and was very sorry for Guy because he was so much in debt.

We are unable to say that the chancellor's holding as to the agreement between the parties here was clearly against the preponderance of the evidence. That being the case, we agree with appellee that Ark. Stat. Ann. § 85-3-603 (2) (Add. 1961) controls. That section reads:

Payment or satisfaction may be made with the consent of the holder by any person including a stranger to the instrument. Surrender of the instrument to such a person gives him the rights of a transferee (Section 3-201 [§ 85-3-201]). [Acts 1961, No. 185, § 3-603.]

The committee comment on this subsection of the UCC makes its application to the facts here quite clear. See comments 4 and 5. Under Ark. Stat. Ann. § 85-3-201 (Add. 1961), appellee, as a transferee, became vested with all rights of Hunt in the note. She had accounted for her possession of the unendorsed note by proving the transaction through which she acquired it. Rights of the transferor (Hunt) which passed to appellee included the mortgage securing the note. *Ragge* v. *Bryan,* 249 Ark. 164, 458 S. W. 2d 403.

The chancellor refused to find appellants delinquent and extended their time for payment, giving them until October 16, 1970, to pay an installment of $200 with interest and requiring subsequent payments to be

made as they came due under the note. This action was taken in spite of the fact that the chancellor found that at least two payments were past due. We feel the chancellor erred in denying foreclosure under the circumstances.

The decree is affirmed on appeal and reversed on cross-appeal. The cause is remanded with directions to enter a decree in favor of appellee giving judgment for all unpaid principal and interest on the debt and foreclosing the lien of the mortgage but allowing appellants a reasonable time to pay the judgment before sale of the lands may be had.