Charles TACKETT and Alberta Tackett *v.* FIRST SAVINGS OF ARKANSAS

90-237                                          810 S.W.2d 927

Supreme Court of Arkansas
Opinion delivered June 10, 1991
[Rehearing denied July 8, 1991.]

*Homer Tanner*, for appellants.

*B. Frank Mackey, Jr. P.A.*, by: *Rosanna Henry*, for appellee.

JACK HOLT, JR., Chief Justice. The appellants, Charles Tackett and Alberta Tackett, appeal from the chancellor's grant of foreclosure, filed by the appellee, First Savings of Arkansas,

F.A. (First Savings). The Tacketts assert three arguments for reversal: 1) First Savings is not the record, legal owner of the indebtedness sued upon; 2) the contract sued upon by First Savings is usurious; and 3) the trial court had no authority to reopen the record to allow the admission of the certificate of First Federal Savings of Arkansas as to corporate existence. The final argument has merit but does not affect our decision to affirm the chancellor's grant of foreclosure.

On November 30, 1979, Ms. A. Tawanna Minix executed a promissory note, payable to the the order of First Federal Savings and Loan Association of Little Rock (First Federal S&L). The note was to be paid in monthly installments and was secured by a mortgage on certain property located in Pulaski County. The mortgage was executed contemporaneously with the note.

Later, Ms. Minix married Larry D. Tackett and on April 27, 1987, they executed a second mortgage on the property to the appellants, Mr. and Mrs. Charles Tackett.

By December, 1987, Mrs. Minix Tackett was in default on her note to First Federal S&L and a foreclosure suit was filed in Pulaski County Chancery Court. The action was brought under the name of First Federal Savings of Arkansas (First Federal Savings) as First Federal S&L changed its name in 1983 when it became a public corporation and issued stock to the public.

The Charles Tacketts were also served as parties to the foreclosure action and subsequently filed a cross-complaint against Larry Tackett and A. Tawanna Minix Tackett to foreclosure their second mortgage lien.

In April, 1988, First Federal Savings filed an amended complaint stating that Mrs. Minix Tackett had brought her loan current since the filing of its action for foreclosure but was again in default, and praying that its mortgage lien be foreclosed. The Charles Tacketts responded to the amended complaint, claiming the note sued upon was usurious.

During the pendency of this action, First Federal Savings became insolvent and was placed under conservatorship by virtue of federal law—the Financial Institutions Reform Recovery and Enforcement Act of 1989 (FIRREA). The Resolution Trust Corporation (RTC) was appointed receiver, and sold substan-

tially all of the assets of First Federal Savings to First Savings of Arkansas (First Savings), a federal mutual savings and loan association created by the Act. The chancellor granted First Savings' motion that it be submitted as the plaintiff and real party in interest, despite the Tacketts' objection that there was no evidence of a proper assignment or endorsement of the note and mortgage from First Federal Savings to First Savings.

The case proceeded to trial, and the chancellor held in favor of First Savings and granted the foreclosure. The Charles Tacketts, as the second mortgage lienholders, now appeal.

■ We review the findings of the chancellor *de novo* on appeal, and do not reverse unless such findings are clearly erroneous. *Killam* v. *Texas Oil & Gas Corp.*, 303 Ark. 547, 798 S.W.2d 419 (1990).

## I. RECORD, LEGAL OWNER OF THE NOTE

The Tacketts first argue that there was no endorsement on the promissory note, as required by Ark. Code Ann. § 4-3-202 (1987), nor any evidence of an assignment or written transfer of title, either when the note was transferred from First Federal S&L to First Federal Savings, or upon transfer from First Federal Savings to First Savings; therefore, they contend, title of the note and mortgage remains in the hands of First Federal S&L.

In disagreeing that such assignment or written transfer was necessary, the chancellor found that the change from First Federal S&L to First Federal Savings was one of corporate name change only and that the entities were one and the same. As to the change from First Federal Savings to First Savings, the chancellor further found that the FIRREA effected a valid transfer of the note and mortgage by operation of law.

Our *de novo* examination of the record reveals that the chancellor reached the right results, but for the wrong reasons. We are not convinced that the chancellor's findings as to the chain of succession of the successor corporations, such as the finding that First Federal S&L and First Federal Savings were the same entity, but for name change, are correct. However, these findings are of no moment as the evidence before us clearly establishes that valid transfers of the note and mortgage in question occurred

between all three institutions under Ark. Code Ann. § 4-3-201 (1987).

■ Ignoring section 4-3-201, the Tacketts rely on section 4-3-202, which defines *negotiation* of written instruments, and provides in pertinent part:

> (1)   Negotiation is the transfer of an instrument in such form, that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary indorsement; if payable to bearer it is negotiated by delivery.
>
> (2)   An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof.

The Tacketts' assertion that endorsement was required before the document could be transferred is erroneous since negotiation of an instrument cannot be equated with mere *transfer*, as defined in section 4-3-201. This section states:

> (1)   Transfer of an instrument vests in the transferee such rights as the transferor has therein, except that a transferee who has himself been a party to any fraud or illegality affecting the instrument or who as a prior holder had notice of a defense or claim against it cannot improve his position by taking from a later holder in due course.
>
> (2)   A transfer of a security interest in an instrument vests the foregoing rights in the transferee to the extent of the interest transferred.
>
> (3)   Unless otherwise agreed any transfer for value of an instrument not then payable to bearer gives the transferee the specifically enforceable right to have the unqualified indorsement of the transferor. Negotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee is the owner.

Note 1, from the Official Comment to U.C.C. § 3-202, explains that: "Negotiation is merely a special form of transfer, the importance of which lies entirely in the fact that it makes the transferee a holder as defined in Section 1-201. . . ." *See also*

*Brown* v. *Bell*, 291 Ark. 116, 722 S.W.2d 592 (1987) (endorsement unnecessary to transfer an instrument by gift).

Our case law is clear that one can become a *transferee*, with all the rights of the transferor, without negotiation or endorsement. For example, in *Griffith* v. *Griffith*, 250 Ark. 845, 467 S.W.2d 737 (1971), we held that where a mother paid off the balance due on her son's note, which was secured by a mortgage, and the wife of the note holder marked the note paid in full, signed her husband's name, and surrendered the note to the mother, the transaction was, in effect, an assignment of the debt, carrying with it the lien of the mortgage. We explained that the mother "had accounted for her possession of the unendorsed note by proving the transaction through which she acquired it." *Id.*, 250 Ark. at 848, 467 S.W.2d at 739. *See also Brown* v. *Bell, supra*; *Williams* v. *Harrell*, 226 Ark. 115, 288 S.W.2d 321 (1956).

Here, the chain of possession was likewise established. Evidence of First Savings' acquisition of the note was presented primarily through the testimony of its Vice President, Glen Williams. Mr. Williams testified that First Federal S&L was in possession of the promissory note and mortgage when it made the decision to sell private stock. He stated that this decision simply effected a change of corporate title—from First Federal Savings and Loan Association of Little Rock to First Federal Savings of Arkansas—and that "all the assets and all the liabilities accrue to the new corporation and they're just transferred on to the public record." Mr. Williams remarked that "all those documents are filed in the county records."

■ Whether there was an actual change of entities or whether the change was one of corporate title only is irrelevant since our concern is whether or not there were valid transfers. Here, First Federal Savings clearly acquired the note from First Federal S&L and continued to collect payments from Mrs. Minix Tackett.

Later, the transfer of assets from First Federal Savings to First Savings occurred by operation of law under the FIRREA, Pub. L. No. 101-73, 103 Stat. 183 (1989). The FIRREA created the Resolution Trust Corporation (RTC), which was then appointed receiver for the insolvent First Federal Savings, and the institution was renamed First Savings of Arkansas. *See* 12 U.S.C

§ 1441a(a) and (b) (Supp. 1991).

In addition, Mr. Williams testified that the RTC executed a general assignment to First Savings assigning "all the Assignor's right, title and interest in and to any and all mortgages and other security interests filed for record in the county of Pulaski and State of Arkansas." The Tacketts argue that this assignment was effective only as to the mortgage and not the note. Even assuming this point to be correct, Mr. Williams' testimony established that *transfers*, were nonetheless made between all three entities involved.

## *II. USURY*

For their second point of error, the Tacketts argue that the late charge contained in the terms of the promissory note rendered the contract usurious. We disagree.

The terms of the note provided for monthly payments of $260.70, which were based on an annual interest rate of 9.875% for a $30,000 loan. In addition, the borrower was to pay "a late charge of 4 percent of any monthly installment not received by the holder within fifteen days after the installment is due." The record indicates that Mrs. Minix Tackett had been late with payments since January, 1988, and ceased paying altogether in August, 1988.

At the time the note was executed, Ark. Const. art. 19, § 13 provided that all contracts exceeding an interest rate of 10% per annum would be void. The Tacketts maintain that the 4% charge, when added to the monthly payments and amortized over the 30 year life of the loan, results in a usurious contract. This reasoning is wrong since the charges were to be assessed only for those months in which payment was overdue.

If an instrument is not usurious on its face, the borrower (or the one challenging it) has the burden of proving it is usurious. *See Bunn* v. *Weyerhaeuser Co.*, 268 Ark. 445, 598 S.W.2d 54 (1980). A charge which is labeled a penalty, but which is really a subterfuge for interest, may render a transaction usurious; however, a late charge that is in the nature of a penalty will not. *See Smith* v. *Figure World Plus, Inc.*, 288 Ark. 355, 705 S.W.2d 432 (1986). Although we examine each cause of this type on all of its own particular facts, two of the principal factors in

determining if the charge is truly a penalty are whether the charge is fixed in amount and whether it is assessed as a onetime charge. *Id.*

The late charge here was fixed at $10.43 per month, which is 4% of the monthly installment of $260.70. Also, the terms indicated, and Mr. Williams testified, that the charge was assessed only for the months in which the payments were late. Mrs. Minix Tackett owed a total late fee of $135.46, which is the charge for 13 months in delinquent payments at $10.43 a month.

The situation here parallels that in *Smith supra*. There, the appellant agreed to pay $10 per month for her health club membership. The contract further provided for a $10 late charge for each month in which the payment was overdue. The appellee health club filed suit for overdue membership fees and for $90, for nine months of late charges. We held the charges were nonusurious since they were fixed in amount; were charged only one time, and were not compounded.

Likewise, in *Hayes* v. *First Nat'l Bank of Memphis, TN*, 256 Ark. 328, 507 S.W.2d 701 (1974), we upheld, as nonusurious, an agreement charging 5% or $5, whichever was less, for each month the installment of $83.16 was late. We noted that "agreements for penalties to induce prompt payments are free from usury because the buyer has it in his power to avoid the penalty by discharging the debt when it is due." *Id.* at 331, S.W.2d at 703.

The late charge here was a onetime penalty, of a fixed amount, which could have been entirely avoided by prompt payment. We affirm the chancellor's finding that the contract was nonusurious.

### III. SUBMISSION OF CERTIFICATE

Lastly, the Tacketts argue that the trial court had no authority to reopen the record and allow First Savings to include a document not introduced at trial.

At issue, is a certified copy of the document concerning the corporate change of title from First Federal S&L to First Federal Savings. Mr. Williams testified as to the corporate name change, noting that documents supporting this change were filed in the

county records, although he did not have them in court. There were no objections to his remarks in this regard.

Following trial, the parties submitted post-trial briefs. First Savings attached to its brief, a certified copy of a recorded document noting Mr. Williams' testimony concerning the corporate name change. In her opinion letter of March 16, 1990, the chancellor referred to the document and to Mr. Williams' testimony as the bases for her finding that there was no substantial change in entities. The court noted the document was a public record and stated that the trial record would be reopened to allow First Savings to insert a certified copy.

The Tacketts later filed a written request for findings of fact and conclusions of law, which included a request for the court to cite its authority for reopening the record; the court answered the request, in her own handwriting opposite each request, but did not do so until after the entry of the decree of record and after the notice of appeal and designation of record was perfected by the Tacketts.

When filing their record on appeal with the Court of Appeals (the case was later transferred to this court), the Tacketts filed a motion to strike, having discovered that the certified copy had been inserted into the transcript and noting further that the document was never filed marked, was never included as a pleading by any party, and was not proper evidence. As a result, the court of appeals remanded the matter to the chancellor to settle the record.

Although not abstracted by either party, an examination of the record reveals the chancellor, upon remand, conducted a hearing at which the parties were represented by counsel. Following oral arguments, the chancellor formally introduced the certificate into the record and concluded that such introduction, and the hearing, properly settled the record. We disagree.

The purpose in settling the record, under Ark. R. App. P. 6(e) is to ensure that the record *"truly discloses what occurred in the trial court."* (emphasis added). It is undisputed that the certificate was not introduced at trial, nor does there appear to have been any discussion concerning its introduction.

Furthermore, the procedure by which the certificate

was introduced *after* trial was improper. Granted, a trial court has discretion to reopen the record before entry of a final decree. *See Kennedy* v. *Kennedy*, 243 Ark. 773, 421 S.W.2d 611 (1967). Before doing so, however, the trial must afford both parties the opportunity to be heard on the matter. This was not done. Without entertaining motions or conducting a hearing on the issue, the chancellor merely announced in her opinion letter, that the record is to be opened to allow the insertion of this new evidence. The chancellor entered her final decree on April 3, 1990, without mention of the certificate, yet it appears in the original record as plaintiff's Exhibit 1.

In sum, we cannot approve the procedures utilized by the chancellor in receiving Exhibit 1 as evidence and causing it to be placed into the record, nor can we agree with the chancellor's apparent assumption that by "settling the record" the improper introduction of a certified copy into evidence was cured.

Although considering this certificate as evidence and placing it in the record was error, we do not see that the Tacketts have been prejudiced. Evidence of the corporate name change, and its relation as to the transference of the note between corporations, was sufficiently introduced through the testimony of Mr. Williams. The certificate has no bearing on our decision on the merits.

Based on the foregoing reasons, we affirm.