9 A.3d 870

**Hosea ANDERSON, et ux.**

v.

**John S. BURSON, et al.**

**No. 00434, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Dec. 22, 2010.

**458**

Randall L. Hagen, Columbia, MD, for appellant.

Bizhan Beiramee (Rathbun & Goldberg, PC, on the brief), Fairfax, VA, for appellee.

Panel: EYLER, DEBORAH S., WOODWARD and JAMES P. SALMON (Retired, Specially Assigned) JJ.

JAMES P. SALMON (Retired, Specially Assigned), J.

Hosea Anderson and his wife, Bernice Anderson, live at 6534 Frietchie Row, Columbia, Maryland (the "Residence"). In 2006, the Andersons decided to refinance their home. Accordingly, on October 13, 2006, Mr. Anderson signed an "Adjustable Rate Balloon Note" promising to pay the lender, Wilmington Finance, Inc. ("Wilmington"), the amount he had borrowed ($227,250.00), plus interest, in monthly installments of $1,541.87. Payments were to continue for 30 years. Among its many provisions was the following: "[Borrower] understands that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payment under this Note is called the 'Note Holder.' "

To secure payment of the amounts due under the Note, Bernice Anderson and Hosea Anderson signed a Deed of Trust on October 13, 2006. The Deed of Trust referenced Wilmington as the "Lender," defined "Borrower" as the Andersons, and listed the "Trustee" as Dominican First Title, LLC ("Dominican").

The Deed of Trust spelled out the involvement of Mortgage Electronic Registration Systems, Inc. ("MERS"),[1] viz:

MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this [Deed of Trust].

Another section of the Deed of Trust states:

The beneficiary of this [Deed of Trust] is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This [Deed of Trust] secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this [Deed of Trust] and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the [Residence].

\* \* \*

Borrower understands and agrees that MERS holds only legal title to interests granted by Borrower in this [Deed of Trust], but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to fore-close and sell the [Residence]: and to take any action required of Lender including, but not limited to, releasing and canceling this [Deed of Trust].

---

1. In 1993, members of the real estate mortgage industry created MERS, an electronic registration system for mortgages. Its purpose is to streamline the mortgage process by eliminating the need to prepare and record paper assignments of mortgage, as had been done for hundreds of years. To accomplish this goal, MERS acts as nominee and as mortgagee, for its members' successors and assigns, thereby remaining nominal mortgagee of record no matter how many times loan servicing, or the mortgage itself, may be transferred. MERS hopes to register every residential and commercial home loan nationwide on its electronic system.
*MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 861 N.E.2d 81, 86, 828 N.Y.S.2d 266 (N.Y.2006) (Kaye, C.J., dissenting in part).

Several important events took place about four months after the Note and Deed of Trust were executed. On February 12, 2007, MERS, as beneficiary and as nominee of Wilmington, transferred its beneficial rights under the Note and Deed of Trust to Morgan Stanley Capital Holdings, Inc. Two days later, on February 14, 2007, MERS, as beneficiary and as nominee of Wilimington, transferred its servicing rights under the Note and Deed of Trust to Saxon Mortgage Services, Inc. ("Saxon"). The Andersons began making their mortgage payments to Saxon as a result of this assignment of servicing rights.

Sometime after February 12, 2007, but before March 1, 2007 (the precise date is unknown), Morgan Stanley Mortgage Capital Holding, Inc. transferred its ownership of the Note to Morgan Stanley ABS Capital I Inc. On March 1, 2007, Morgan Stanley ABS Capital I Inc. "sold, transferred, assigned, set-over and conveyed to Deutsche Bank Trust Company Americas, as Trustee and Custodian for Morgan Stanley Home Equity Loan Trust, MSHEL 2007–2 (hereinafter "Deutsche") all right, title, and interest in and to the Note...."

Starting in the spring of 2007, Mr. Anderson fell behind on the payments due under the Note.

On February 21, 2008, Erik W. Yoder of Shapiro & Burson LLP, as attorney for Substitute Trustees John S. Burson, William M. Savage, Gregory N. Britto, Jason Murphy, Kristine D. Brown and Erik W. Yoder (collectively, "Substitute Trustees"), filed a Line to Docket Foreclosure with respect to the Andersons and their Residence in the Circuit Court for Howard County. The Line was accompanied by (i) A certified copy of the Deed of Trust, (ii) Appointment of Substitute Trustees, (iii) Statement of Indebtedness, (iv) Affidavit of Non–Military Status, (v) Attorney's Certification Under Rule 1–313, and (vi) Motion for Acceptance of Lost Note Affidavit with Exhibit A (Affidavit of Lost Note) and proposed Order. These documents identified the "Lender" under the Note and Deed of Trust as:

Deutsche Bank Trust Company Americas formerly known as Banker's Trust Company, as Trustee and Custodian for Morgan Stanley Home Equity Loan Trust, MSHEL 2007–2 by: Saxon Mortgage Services, Inc. f/k/a Meritech Mortgage Services, Inc. as its attorney-in-fac[t].

The Motion for Acceptance of Lost Note Affidavit asked the court "to accept a lost note affidavit in lieu of the original note in this case on the grounds that the original note is lost and cannot be found by the Plaintiff or the Noteholder." The Lost Note Affidavit, attached to the motion as Exhibit A, stated, in relevant part: "... Lender was the note holder under [the Deed of Trust] ... and that said note ... has been lost or destroyed and cannot be produced."

On February 26, 2008, the court signed an Order stating that "a lost note affidavit evidencing the indebtedness secured by the deed of trust which is the subject of this foreclosure action be accepted in lieu of the original."

To prevent foreclosure on his Residence, Hosea Anderson, on March 13, 2008, filed for relief in the United States Bankruptcy Court for the District of Maryland. Thereafter, Mrs. Anderson filed for bankruptcy as well—in the same court. Their filings stayed the foreclosure proceeding then pending in the circuit court.

The Andersons reached an agreement with Saxon, the servicer of the Deed of Trust, in the bankruptcy cases. On June 2, 2008, the bankruptcy court entered a Consent Order reflecting an agreement reached between the Andersons and Saxon. The Consent Order provided, *inter alia*, that the automatic stay was terminated so as to permit Saxon "to commence foreclosure proceedings in accordance with State Law and pursuant to the terms of the [Deed of Trust]." In exchange for the lifting of the stay, Saxon agreed to forbear from foreclosing on the Residence if the Andersons cured their arrearages in six equal monthly payments of $804.44. The Order further provided that if the Andersons failed to make these payments when due, then they would have two cure opportunities, after which any additional failure would cause

the Consent Order to automatically terminate and allow Saxon to proceed with foreclosure.

Due to a decline in Mr. Anderson's income, the Andersons were unable to make the payments called for in the Consent Order and as a consequence the foreclosure proceedings initiated by the Substitute Trustees recommenced.

A foreclosure sale of the Residence was scheduled for November 18, 2008. On November 12, 2008, the Andersons filed a motion for injunction to stay foreclosure proceedings in the Circuit Court for Howard County. Movants alleged that the Substitute Trustees and Deutsche had no legal standing to foreclose on the Residence because they had failed to establish that Deutsche was the lawful owner or holder of the Note and Deed of Trust.

The circuit court, on November 17, 2008, pursuant to a motion by the Andersons, filed a temporary restraining order ("TRO") enjoining the sale scheduled for November 18th. A hearing on the TRO was set for November 26, 2008. After the November 26, 2008 hearing, the circuit court enjoined the foreclosure proceedings until an evidentiary hearing could be held to address the issue of whether the Substitute Trustees had a right to foreclose on the Residence.

The evidentiary hearing was held on March 31, 2009. At the hearing it was revealed that the Note signed by the Andersons did not contain an indorsement. Instead, the Substitute Trustees produced a separate undated document entitled "Allonge to Note." [2] The Allonge to Note read:

PAY TO THE ORDER OF

---

**2.** *Blacks Law Dictionary,* 83 (8th Ed.2004) defines the word "Allonge" as follows:

A slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsement when the original paper is filled with indorsements. Former UCC § 3–204(a) eliminates that requirement and provides that "a paper affixed to the instrument is part of the instrument." The UCC comment makes it clear that the Allonge is valid even if space is available on the instrument. (Citations omitted.)

Deutsche Bank National Trust Company, as Trustee for Morgan Stanley Home Equity Loan Trust, 2007–2

WITHOUT RECOURSE

*WILMINGTON FINANCE, INC.*

*(signed by Christopher Kelly, Vice President)*

At the hearing, the Substitute Trustees called, as their sole witness, Dennis Sugrue, Esquire, an associate attorney at the law firm of Shapiro & Burson, which is the law firm at which all the Substitute Trustees are employed. The testimony of Mr. Sugrue, coupled with the exhibits that were admitted by court, proved that: 1) the Allonge was signed by Wilmington—at the earliest—sometime in March 2007, and 2) by February 14, 2007, Wilmington had divested itself of all its rights in the Note. Based on that proof, the Andersons argued that the Allonge was worthless because it was signed at a point when Wilmington had no rights or interest to convey.

The Andersons' main contention at the evidentiary hearing was that in order for Deutsche to have a right to name the Substitute Trustees it (Deutsche) would have to demonstrate that it was a holder of the Note. According to the Andersons, if Deutsche was not a holder then it had no right to appoint anyone to foreclose on the property. The Andersons supported their "not a holder" argument by pointing out, correctly, that the Note was not indorsed by anyone in Deutsche's chain of title except Wilmington, and that when Wilmington indorsed it, by signing the Allonge, it had given up all its rights, title and interest in the Note.

The Substitute Trustees stressed that the Andersons had never controverted the fact that the loan was in default and that Hosea Anderson had not paid the money due under the Note for a long period of time. They also pointed out that during the lengthy period the Note had been in default, no one else had claimed ownership of the Note. This proved, circumstantially, that it would be impossible to suppose that some third party owned the Note. The Substitute Trustees also pointed out that the Andersons, in the bankruptcy court, had

both listed the creditor who held a first lien on their Residence as "Saxon Mortgage," the servicers of the Andersons' loan.

The motions judge, after hearing argument from counsel, delivered an oral opinion in which he said, *inter alia:*

There's been acknowledgment of the debt in the bankruptcy case, originally under a [Chapter] Thirteen and I understand we're in a [Chapter] Seven now at this point. I have a Schedule "D", you know, in there, and I understand we have this very complicated track of servicers, holders, assignments, Allonges; you know, some of the larger banking institutions in the world—Deutsche Bank, Morgan Stanley—and we've got meters out there tracking this stuff. This is not the fourteenth century; this is the beginning of the twenty-first century, where we have electronic databases and this stuff is moving very quickly, you know, *et cetera.*

I've cited those other cases which I've looked at. I don't see fraud in here. I understand the Allonge is not dated; I understand your argument. I'm satisfied, though, that it has an indicia of reliability under the circumstances, and that there's not fraud, *et cetera,* involved. You know, I would adopt the authorities that I quoted there. Again, even assuming that the Defendant has a valid claim against the mortgage, such claims wouldn't defeat the mortgagee's interest in a Deed of Trust because it's a *bona fide* assignee for value. It also is a holder of the Note secured by the Deed of Trust; Commercial Law 3–302(a), *et cetera.* There is authority under *Heider vs. Bladen,* 83 Maryland, that the filing of the Note does not establish the invalidity [sic] of a foreclosure action. The law doesn't require the production of the original note for the enforcement, as a matter of contract. Again, it's a matter of payment, proof of payment, *et cetera,* you know, we've got commercial law perhaps conflicting with real property law, *et cetera.* But again, the basic action I have before me is an *in rem* action, so I'm going on the real estate side, *et cetera.*

The Deed of Trust ... The contract between the parties, security interest, *Chapman vs. Ford,* 246 Maryland 42 [227 A.2d 26 (1967) ], where the language in the Deed of Trust is

clear, it will be enforced. *Leisure Campground vs. Leisure Estates,* 280 Maryland 220 [372 A.2d 595 (1977) ], and, you know, I understand the situation here. But under the circumstances, the injunction is lifted; the case is going forward. Thank you.

On April 3, 2009, three days after the circuit court lifted the injunction, Michael G. Rinn, Esquire, Trustee for the Bankruptcy Estate of Hosea Anderson, filed a complaint in the bankruptcy action titled "Complaint to Avoid and Recover Lien, for Declaratory Judgment and for other relief." Included in the allegations set forth in Mr. Rinn's complaint were the following:

• Prior to the commencement of these proceedings, the Debtor or [sic] about October 13, 2006, executed and delivered to Wilmington Finance, Inc. a deed of trust (the "Deed of Trust") upon the Real Property in connection with a note dated October 13, 2006. (The "Note").

• That said Deed of Trust was recorded among the Land Records of Howard County, Maryland on or about June November [sic] 13, 2006 in Lib 10349 folio 429.

• Defendant Deutsche Bank is asserted to be the current holder of the Note, related to the Deed of Trust described herein

• Defendants John S. Burson, William M. Savage, Gregory N. Britto, Jason Murphy, Kristine D. Brown, Erik W. Yoder are the substitute trustees under the Deed of Trust.

• The Deed of Trust to Defendants is defective and invalid as to the Plaintiff[s] Trustee pursuant to REP 4–106(a) in that the Deed of Trust fails to contain a [sic] identifiable affiant to the the [sic] requisite Affidavit of Consideration and Disbursement.

• That the Trustee pursuant to the provisions of 11 U.S.C. § 544(a)(1) has the status of a judgment lien creditor.

• That the Trustee pursuant to the provisions of 11 U.S.C. § 544(a)(3) has the status of a bonafide purchaser who takes without knowledge and holds the power to avoid Defendants lien/Deed of Trust.

• The Defendants failed to perfect the recordation of its Deed of Trust pursuant to the provisions of the Annotated Code of Maryland Real Property Article, § 4–106, et seq. in that in the absence of a [sic] legally sufficient acknowledgments and affidavits, the Deed of Trust upon the Real Property is void and invalid as to the Trustee.

• That said Deed of Trust is void and as to the Plaintiff/ Trustee pursuant to the provisions of 11 U.S.C. § 544.

Among other relief, the Trustee asked the court to declare that the interest "of the Trustee in and to the ... [Residence] or the proceeds thereof be declared superior to the unperfected interest of [Deutsche and the Substitute Trustees]".

On April 30, 2009, the Andersons filed the subject interlocutory appeal from the decision of the Circuit Court for Howard County lifting the injunction.

On November 30, 2009, the Trustee who had filed the complaint in the bankruptcy court on behalf of Hosea Anderson filed a pleading entitled "Voluntary Stipulation of Dismissal with Prejudice" that dismissed the complaint filed in the bankruptcy court on behalf of Hosea Anderson.

In the subject appeal, the Andersons raise two questions:

1. Did the trial court abuse its discretion in finding that appellees' principal, Deutsche, is the "holder" of the Note and Deed of Trust, and, therefore, could appoint and authorize appellees to bring this foreclosure action?

2. Did the trial court abuse its discretion in ruling that appellants waived the right to challenge standing because appellant Hosea Anderson listed the servicing agent, Saxon Mortgage, as a secured creditor in his bankruptcy Schedule D?

There is no need to answer the second question presented. And, as to the first question, we shall hold that although Deutsche was not a "holder" as that term is defined in the Uniform Commercial Code, as enacted in Maryland, Deutsche nevertheless had a right to enforce the Note and to appoint

the Substitute Trustees. Therefore, the motions judge did not err in lifting the injunction.

## I.

### Substitute Trustee's Motion to Dismiss Appeal

As part of their brief, the appellees filed a motion to dismiss this appeal "because the case is moot due to the application of the doctrine of *res judicata* . . . ." In support of their motion, the Substitute Trustees argue:

- In his bankruptcy case, following the disposition of the foreclosure proceeding, the bankruptcy trustee [Mr. Rinn] filed an adversary proceeding challenging the validity of the deed of trust.

- Both Deutsche Bank and the substitute trustees were named as defendants, and the trustee sought a declaration that the interests of the defendants in the real estate or the proceeds thereof be declared void as to the Trustee and the Bankruptcy Estate.

- Ultimately, the bankruptcy trustee dismissed his complaint with prejudice.

 * * *

- Because the issue as to Deutsche Bank's and the substitute trustees' status with respect to the property was at issue, and because the prejudicial dismissal constitutes a final judgment on the merits, *cf. Parker v. Housing Authority of Baltimore City,* 129 Md.App. 482, 488 [742 A.2d 522] (1999) ("The effect of the designation 'without prejudice' is simply that there is no adjudication on the merits and that, therefore a suit on the same cause of action is not barred by principles of res judicata."), Appellant is not barred from challenging their right in the subject property under the doctrine of res judicata. *See Davidson v. Seneca Crossing Section II Homeowner's Ass'n, Inc.,* 187 Md.App. 601, 633 [979 A.2d 260] (2009).

- Moreover, "[i]njunctive relief is a preventative and protective remedy, aimed at future acts, and is not intended

to redress past wrongs." *Davidson,* 187 Md.App. at 614 [979 A.2d 260] (quoting *El Bey v. Moorish Science Temple of America,* 362 Md. 339, 353 [765 A.2d 132] (2001)). Given that there can now be no dispute about Deutsche Bank and the substitute trustees rights in the subject property, the injunctive relief requested by Appellant in the trial court is moot. *See* Md. Rule 8–602(10) ("On motion or its own initiative, the Court may dismiss an appeal for any of the following reasons: .... (10) the case has become moot.").

\* \* \*

We shall deny the Substitute Trustees' motion.

In *R & D 2001 LLC v. Rice,* 402 Md. 648, 663, 938 A.2d 839 (2008), the Court said:

> The doctrine of claim preclusion, or *res judicata,* bars the relitigation of a claim if there is a final judgment in a previous litigation where the parties, the subject matter and causes of action are identical or substantially identical as to issues actually litigated and as to those which could have or should have been raised in the previous litigation. The doctrine embodies three elements: (1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the prior litigation.

*Id.* (citations omitted).

In short, *res judicata* "restrains a party from litigating the same claim repeatedly and ensures that courts do not waste time adjudicating matters which have been decided or *could have been* decided fully and fairly." *Anne Arundel County Bd. Of Educ. v. Norville,* 390 Md. 93, 107 [887 A.2d 1029] (2005) (emphasis in original).

Appellee claims that although the issue the Andersons present in this appeal was not raised in the bankruptcy case

filed by Mr. Anderson's trustee, the issue could have been decided in the complaint the trustee filed.

 The doctrine of *res judicata* is here inapplicable. For starters, Michael G. Rinn was the trustee for the bankruptcy estate of Hosea Anderson. The Trustee did not represent Bernice Anderson. Moreover, insofar as is shown in the record, he was not "in privity with" Mrs. Anderson. Thus, the parties in the present litigation were not "the same or in privity with the parties to the earlier litigation."

Second, contrary to the Substitute Trustee's position, Mr. Rinn, the bankruptcy trustee for Mr. Anderson, could not have successfully raised in the bankruptcy court the same issue that is raised by the Andersons in this appeal. If the bankruptcy trustee had attempted to raise that same issue, the bankruptcy trustee could not have overcome the bar of the *res judicata doctrine* because the bankruptcy trustee filed his complaint for declaratory relief *after* the Circuit Court for Howard County had rejected the Andersons' argument that the appellees had no right to foreclose. For *res judicata*, purposes it does not matter that the Andersons appealed that adverse ruling. *See Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md.App. 504, 525, 852 A.2d 1029 (2004) (the pendency of an appeal does not affect the finality of a judgment for *res judicata* purposes).

## II.

In their brief, the Substitute Trustees expend a great deal of effort discussing whether they had the burden of proving their standing to institute the foreclosure proceedings. They contend that because this case was an *In rem* proceeding, they had no burden of proving that they had standing. The appellants, on the other hand, assert that the Substitute Trustees were required to prove standing even though appellants were the ones who sought an injunction.

It is unnecessary for us to decide which party had the burden of proof, because here the facts were undisputed. Assuming, *arguendo,* that the appellees did have the burden of

proving that they had standing, as explained below, they proved it. And the appellants agree, at least tacitly, that if the Substitute Trustees had the power to foreclose, the Andersons were not entitled to an injunction.[3] *See* Restatement (Third) of Property, Mortgages § 5–4(c) (a mortgage may be enforced only by, or on behalf of, a person who is entitled to enforce the obligation the mortgage secures.). *See also Balance Ltd., Inc. v. Short*, 35 Md.App. 10, 14, 368 A.2d 1116 (1977). The decisive issue is a legal one, viz: whether Deutsche had a right to enforce the Note.

### III.

Maryland Code (2002 Repl.Vol.), Commercial Law Article, section 3–301 provides:

---

**3.** In support of their position, appellant's cite *Wells Fargo Home Mortg., Inc., v. Neal*, 398 Md. 705, 922 A.2d 538 (2007):

The *Wells Fargo* court further noted that "[t]he foreclosure procedure in Maryland is equitable in nature[,]" and that an injunction to enjoin a foreclosure of a deed of trust "entreats a trial court to exercise its equitable powers." *Id.* at 728–29 [922 A.2d 538] (citations omitted). Although only one with 'clean hands' can obtain equitable relief such as an injunction, the Court of Appeals held that the mortgagor's "technical" payment default should be treated as "the legal fiction that no default exists ... until such time as Wells Fargo complies with the statutory and regulatory imperative to pursue loss mitigation prior to foreclosure." *Id.* at 730 [922 A.2d 538]. Consequently, the mortgagor in *technical payment default* was entitled to seek an injunction *without* having to admit the debt or default, which would have required that he pay all debt due into the court.

Like the mortgagor in *Wells Fargo*, Appellants invoked equitable principles for injunctive relief in order to challenge the validity and authority of Appellees to bring the foreclosure action. Mr. Anderson's denial of the debt and default in his Affidavit allowed the trial court to grant an injunction to stop the foreclosure until it was satisfied that Appellees' principal established ownership of the Note and Deed of Trust. The trial court ultimately did conclude the principal had established such ownership, which Appellants now challenge as reversible error.

Although for reasons set forth *infra* we do not agree with the Andersons' position that the trial court committed reversible error, we do agree with their position that they were entitled to an injunction *if* the evidence showed that the Substitute Trustees' principal, Deutsche, had no right to direct the appellees to enforce the note.

"Persons entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 3–309 or § 3–418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

The Substitute Trustees say in their brief, on several occasions, that Deutsche was the "holder" of the Note, but they do not demonstrate why this is so.

The term "holder" is defined in section 1–201(20) of the Commercial Law Article, ("CL") to mean, in relevant part:

(a) The person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession.

The Note signed by Mr. Anderson was not payable to bearer. Moreover, Deutsche does not qualify as an "identified person that is the person in possession." The only "identified person" mentioned in the Note is Wilmington.

While it is true that the Allonge does specifically name Deutsche, this is of no consequence because the evidence at trial established that Wilmington, after February 14, 2007, had nothing to transfer to Deutsche. By February 14th, Wilmington had transferred the Note to Morgan Stanley Mortgage Capital Holding, Inc., and had transferred its servicing rights to Saxon. This all happened before Deutsche was even appointed trustee of the Home Equity Loan Trust.

The Substitute Trustees argue, in the alternative, that even if Deutsche was not a "holder," Deutsche qualified as "a non-holder in possession of the instrument who has the rights of a holder...." They rely on section 3–301(ii), of the Commercial Law Article, which provides that a non-holder in possession of the instrument who has the rights of a holder can enforce the instrument.

The evidence at trial proved, without contradiction, that Deutsche was in possession of the Note signed by Hosea

Anderson. The Official Comment to the Uniform Commercial Code, concerning section 3–301 reads, in material part, as follows: "A non-holder in possession of an instrument includes a person that acquired rights of a holder by subrogation or under section 3–203(a). *It also includes any other person who under applicable law is a successor to the holder or otherwise acquires the holder's rights* ". (Emphasis added).

The question then becomes: Does Deutsche fit within the definition of "a non-holder in possession of a note" because, "under applicable law, it was a successor to the holder or otherwise acquires the holders rights?" We shall answer that question in the affirmative.

The documents introduced into evidence by the Substitute Trustees showed that the only entity that qualified as a "holder" in Deutsche's chain of title was Wilmington, because no other entity had a valid indorsement. But, the evidence also showed, without dispute, that Deutsche was one of the "successors to the holder." Therefore, the evidence produced showed that Deutsche met the definition of a "Note holder in possession of an instrument." As such, under section 3–301 of the Commercial Law Article, Deutsche was a "person entitled to enforce" the Note.

Of course, the validity of the above analysis depends upon whether, "under applicable law," Deutsche was a "successor to the holder or otherwise acquires the holder's rights."

Section 3–203(a) of the Commercial Law Article reads:

(a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.

In this case all Deutsche's predecessors in the chain of title received delivery of the Note with the purpose of giving them the right to enforce the Note. Without a right of enforcement, the Note would have been worthless.[4] *Wal Mart Stores, Inc. v. Holmes*, 416 Md. 346, 375, 7 A.3d 13 (2010) ("An obligation can only be 'legal,' however, when it is susceptible of legal

---

4. The official comment to section 3–203 reads, in pertinent part:

enforcement. A duty without a means for enforcing it is not a legal duty at all.").

Section 3–203(b) of the Commercial Law Article provides that "transfer of an instrument whether or not transfer is a negotiation [i.e., indorsed], vests in the transferee any right to the transferor to enforce the instrument, including any rights as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument." *See Tackett v. First Sav. of Arkansas,* 306 Ark. 15, 810 S.W.2d 927, 930 (1991) (transferee obtains right of transfer despite lack of indorsement and thus has right to enforce instrument). This provision embodies what has come to be known as the "shelter" or "umbrella principle." *Adams v. Madison Realty & Dev., Inc.,* 853 F.2d 163, 169 (3d Cir.N.J.1988). The *Adams* Court said:

> This section extends the accepted rule in commercial law that a transferor assigns to his transferee all the rights he had in the transferred note. U.C.C. § 3–201 Official Code Comment (1). *The shelter principle permits a transferee, who cannot satisfy the formal prerequisites of negotiation to step into the shoes of his transferor, succeeding to the same rights and liabilities as his predecessor.* 2 [F] Hart & [W] Willier, ... [Commercial Paper under the Uniform Commercial Code] § 12.02[2].

> If the transferor was a holder in due course, the transferee succeeds to the rights of a holder in due course, although—

---

An instrument is a reified right to payment. The right is represented by the instrument itself. The right to payment is transferred by delivery of possession of the instrument "by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." The quoted phrase excludes issue of an instrument, defined in Section 3–105, and cases in which a delivery of possession is for some purpose other than the transfer of the right to enforce. For example, if a check is presented for payment by delivering the check to the drawee, no transfer of the check to the drawee occurs because there is no intent to give the drawee the right to enforce the check.

because the purported negotiation failed—he does not enjoy the status of holder in due course. *See Security Pac. Nat'l Bank v. Chess,* 58 Cal.App.3d 555, 129 Cal.Rptr. 852 (1976) (provision assures transferee rights of transferor); *Crossland Savings Bank FSB [v. Constant ]*, 737 S.W.2d [19] at 21 [ (Tex.App.1987) ] (if transferor is holder in due course, transferee can assert rights of holder in due course); *Estrada [v. River Oaks Bank & Trust Co.]*, 550 S.W.2d [719] at 728 [ (Tex.Civ.App.1977) ] (same). *See also Great Western Bank & Trust Co. v. Pima Savings & Loan Ass'n,* 149 Ariz. 364, 718 P.2d 1017, 1020 (1986) (assignment to owner transferred rights of holder through shelter principle); *Weast v. Arnold,* 299 Md. 540, 474 A.2d 904, 909 (1984) (same). To attain its purpose of guaranteeing the transferor a ready market for his negotiable instrument, *the shelter principle operates cumulatively.* As some commentators explain, a transferee of a holder in due course takes through, rather than from, his transferor. *Thus, if the transferor's predecessor was a holder but the transferor was not, the ultimate transferee may succeed to the rights of the original holder: the holder's rights pass through each assignee. See* 5 *Anderson* § 3–201:22; 1[R] Alderman ... [a Transaction Guide to the Uniform Commercial Code] at 630.[5]

(Emphasis added.)

Wilmington was a holder in due course. Wilmington transferred the Note to Morgan Stanley Mortgage Capital Holding, Inc., which thereby acquired all of Wilmington's rights to enforce the instrument including any right as a holder in due

---

**5.** The excerpt just quoted concerns section 3–201(1) of the Commercial Law Article, which was in effect in Maryland between 1975 and 1992. Section 3–201(1) reads:

Transfer of an instrument vests in the transferee such rights as the transferor has therein, except that a transferee who has himself been a party to any fraud or illegality affecting the instrument or who as a prior holder had notice of a defense or claim against it cannot improve his position by taking from a later holder in due course. In 1992, section 3–201 was recodified. Insofar as is here relevant, what was once section 3–201(1) is now found in section 3–203(b) of the Commercial Law Article.

course. The second transferee, Morgan Stanley ABS Capital
I Inc., in turn, acquired all the rights held by its transferor,
Morgan Stanley Mortgage Capital Holding, Inc. And, when
Morgan Stanley ABS Capital I Inc. "sold, transferred, as-
signed, and conveyed" to Deutsche all its rights, title, and
interest it had in the Note, Deutsche acquired all the rights
that had vested in its transferor because the shelter principle
operates cumulatively. *Id.* Thus, under applicable law, be-
cause it was not alleged that anyone in the chain of title had
engaged in fraud or illegality,[6] Deutsche was a "successor to
the holder" of the Note and had the same rights as Wilming-
ton had to name the Substitute Trustees to enforce its collec-
tion rights.

Accordingly, under the facts proven at the evidentiary hear-
ing, the Andersons did not have a right to an injunction
because Deutsche was a non-holder in possession of the Note
who had the rights of a holder.

## IV.

 In support of their claim that they had a right to have
the court keep the injunction in force, the Andersons raise

---

**6.** The absence of fraud or illegality is an important part of our analysis.
In the official comments to section 3–203, several examples are given
showing how the existence of fraud or illegality can be outcome
determinative, viz:

The operation of Section 3–203 is illustrated by the following cases.
In each case Payee, by fraud, induced Maker to issue a note to Payee.
The fraud is a defense to the obligation of Maker to pay the note
under Section 3–305(a)(2).

　　　　　* * *

*Case # 4.* Payee sold the note to Purchaser who took for value, in
good faith and without notice of the defense of the Maker. Purchaser
received possession of the note but payee neglected to indorse it.
Purchaser became a person entitled to enforce the instrument but did
not become the holder because of the missing indorsement. If
purchaser received notice of the defense of Maker before obtaining
the indorsement of Payee, Purchaser cannot become a holder in due
course because at the time notice was received the note had not been
negotiated to Purchaser. If indorsement by Payee was made after
Purchaser received notice, Purchaser had notice of the defense when
it became the holder.

several issues not raised in their opening brief and not raised in the trial court. For instance, they stress that in the deed of appointment, in which the appellees were named as Substitute Trustees, the holder of the Note was said to be Deutsche Bank Trust Company Americas. Appellants point out, however, that the Allonge and the pooling agreement that were introduced into evidence at the March 31, 2009 hearing, the entity identified as holding the Note was said to be "Deutsche Bank National Trust Company." According to the Andersons, because of this misnomer, the Substitute Trustees have no power to exercise the power of sale in the Deed of Trust.

We shall decline to address any of the issues raised by the Andersons for the first time in their reply brief. *See Strauss v. Strauss*, 101 Md.App. 490, 509, n. 4, 647 A.2d 818 (1994) ("the scope of a reply brief is limited to the points raised in the appellee's brief, which, in turn, address[es] the issues originally raised by appellant ... A reply brief cannot be used as a tool to inject new argument."). *See also Gazunis v. Foster*, 400 Md. 541, 554, 929 A.2d 531 (2007), and cases therein cited.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**